**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ADOLFO RENDON BRACAMONTES,

*Petitioner,*

v.

ERIC H. HOLDER, JR., ATTORNEY
GENERAL,

*Respondent.*

No. 10-2033

ADOLFO RENDON BRACAMONTES,

*Petitioner,*

v.

ERIC H. HOLDER, JR., ATTORNEY
GENERAL,

*Respondent.*

No. 10-2280

On Petitions for Review of Orders of
The Board of Immigration Appeals.

Argued: December 7, 2011

Decided: March 29, 2012

Before NIEMEYER, AGEE, and WYNN, Circuit Judges.

Petition for review granted; vacated and remanded in part and dismissed in part by published opinion. Judge Wynn wrote the majority opinion, in which Judge Agee concurred. Judge Niemeyer wrote an opinion concurring in part and dissenting in part.

---

**COUNSEL**

**ARGUED:** Satnam Singh, Norfolk, Virginia, for Petitioner. Sheri Robyn Glaser, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Ernesto H. Molina, Jr., Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

WYNN, Circuit Judge:

Based on Petitioner's conviction for an aggravated felony, the United States sought to remove him pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA). The immigration judge ("IJ") denied Petitioner statutory eligibility for a waiver of inadmissibility under 8 U.S.C. § 1182(h), or section 212(h) of the INA. Following Petitioner's appeal, the Board of Immigration Appeals ("BIA") agreed with the IJ, concluding that Petitioner's post-entry adjustment of status to lawful permanent resident constituted an "admission" to the United States.

Because we find that the plain language of section 212(h) does not bar an alien who adjusts post-entry to lawful permanent resident status from seeking a waiver of inadmissibility,

we grant the petition, vacate the order of removal, and remand this case to the BIA for further proceedings.

## I.

Petitioner Adolfo Rendon Bracamontes's mother brought him into the United States illegally from Mexico in 1976, when he was under two years old. On December 4, 1987, Petitioner and his mother were granted temporary resident status, which was adjusted to lawful permanent resident status on May 11, 1990. Since 1976, Petitioner has lived continuously in the United States, except for a weeklong visit to Mexico in June 1988.

In 1999, Petitioner pled guilty in Virginia state court to the aggravated felony of malicious wounding. He was sentenced to ten years in prison, with seven years suspended; he served his sentence and probation and has subsequently complied with all court orders. Petitioner was released from custody in May 2001, and shortly thereafter, he married a United States citizen. He has three biological children, ages seven, seventeen, and eighteen, and a nineteen-year-old stepson.

In January 2009, Petitioner's spouse submitted an I-130 Petition for Alien Relative for his benefit, along with Petitioner's I-485 Application to Register Permanent Residence or Adjust Status. Petitioner sought a waiver of removal in spite of his aggravated felony conviction, based on his status as the spouse of a United States citizen, and asserted that his removal would result in extreme hardship for his spouse and children. Following an interview in August 2009, Petitioner's application for adjustment of status was denied on the grounds that because he was already a lawful permanent resident, he was not eligible for adjustment. Removal proceedings were immediately initiated against Petitioner.

On October 27, 2009, an IJ granted the Department of Homeland Security's Motion to Pretermit Petitioner's applica-

tions for adjustment of status and a waiver, concluding that he was ineligible for a waiver under 8 U.S.C. § 1182(h), or section 212(h) of the INA ("section 212(h) waiver"), because of his aggravated felony conviction. Specifically, the IJ found that Petitioner was admitted to the United States as a returning temporary resident following his weeklong visit to Mexico in 1988, and was then subsequently "admitted" as a lawful permanent resident by virtue of the adjustment of his status in 1990. Petitioner appealed the IJ's decision to the BIA.

While that appeal was pending, Petitioner filed a motion to remand on July 13, 2010, seeking consideration and adjudication of an application for protection under the United Nations Convention Against Torture ("Convention Against Torture") on the grounds that he feared retaliation from Mexican gangs for refusing to join them and opposing their activities in California. On August 30, 2010, the BIA dismissed Petitioner's appeal, agreeing with the IJ on the definitions of "admission" and "lawfully admitted for permanent residence." The BIA also denied Petitioner's motion to remand, holding that Petitioner had failed to show that he could not have presented his Convention Against Torture claim at the earlier proceeding before the IJ.

On September 9, 2010, Petitioner filed a petition for review of the BIA decision with this Court. On September 28, 2010, he filed a motion with the BIA to reconsider his eligibility for a section 212(h) waiver and his motion to remand. Petitioner also sought a stay of removal. That motion was also denied, on the grounds that Petitioner had failed to show any error of law or fact that would change the decision, or to meet his burden of showing that his newly submitted—and largely duplicative—evidence might alter the outcome. Petitioner filed another petition for review of that BIA decision with this Court. The petitions were consolidated by this Court on November 17, 2010.[1]

---

[1] In the meantime, Petitioner was deported to Mexico on October 7, 2010.

## II.

On appeal, Petitioner presents two main arguments: (1) he is not statutorily barred from seeking a section 212(h) waiver of inadmissibility; and (2) the BIA abused its discretion by denying his motion to remand and precluding him from seeking additional relief under the Convention Against Torture, by denying his motion to reconsider, and by denying him a stay of removal. We consider each issue in turn.

## A.

First, Petitioner argues that contrary to the IJ and BIA decisions, he is eligible to seek a waiver of inadmissibility under section 212(h). We review de novo legal conclusions of the BIA, including issues of statutory construction, *Li Fang Lin v. Mukasey*, 517 F.3d 685, 691-92 (4th Cir. 2008),[2] while affording appropriate deference to the BIA's interpretation of the INA, as outlined in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984). *See also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

Under the principles articulated in *Chevron*, we begin our analysis with a determination of whether the statute at issue is unambiguous with respect to the question presented. If so, then the plain meaning controls the disposition of Petitioner's appeal. *Saintha v. Mukasey*, 516 F.3d 243, 251 (4th Cir. 2008) (citing *Chevron*, 467 U.S. at 843). Thus, we must determine whether Congress, through the INA, has unambiguously pro-

---

[2]If Petitioner were appealing the discretionary decision of the Attorney General to deny him a waiver of inadmissibility, we would be without jurisdiction to review such a decision. *See* 8 U.S.C. § 1182(h) ("No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection."). However, Petitioner instead challenges the BIA's threshold determination that he is statutorily ineligible even to *seek* a section 212(h) waiver, a question of law that remains subject to our appellate review.

hibited an alien from seeking a section 212(h) waiver if he commits an aggravated felony subsequent to his post-entry adjustment to lawful permanent resident status.

On the other hand, "[i]f . . . the statute is silent or ambiguous with respect to the specific issue before us, the question for this court becomes whether the BIA's interpretation 'is based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843). Moreover, the Supreme Court has noted that if there is ambiguity in the statute, judicial deference to the executive branch agency "is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *Aguirre-Aguirre*, 526 U.S. at 425 (internal quotation marks and citation omitted).

The principal statutory provision at issue in this case, section 212(h) of the INA, vests the Attorney General with the discretion to waive the inadmissibility of an alien based on the alien's conviction for an aggravated felony if the denial of admission "would result in extreme hardship" to the alien's United States citizen spouse or other family members. 8 U.S.C. § 1182(h). Specifically, section 212(h) states in pertinent parts:

> The Attorney General may, in his discretion, waive the application of [the statutory bars to admissibility based on, *inter alia*, a conviction for a crime involving moral turpitude] . . . if—
>
> > (1) . . . .
> >
> > (B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of

admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien;

. . . . and

(2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

. . . . *No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony* or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

*Id.* (emphasis added). Thus, by its plain language, section 212(h) prohibits an alien from receiving a waiver of inadmissibility if that alien lawfully entered the United States *with lawful permanent resident status* and committed an aggravated felony subsequent to "such admission" as a lawful permanent resident.[3] *Id.* (emphasis added).

---

[3]Of course, by its plain language and use of the term "inadmissibility," section 212(h) appears to apply only to those aliens seeking admission, not those, such as Petitioner, who already have lawful permanent resident status. However, courts have held that "qualifying removable aliens may also obtain such waivers." *Martinez v. Mukasey*, 519 F.3d 532, 541-42 (5th Cir. 2008) (citing *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 379 n.5 (5th Cir. 2005); *Jankowski-Burczyk v. INS*, 291 F.3d 172, 175 & n.2 (2d Cir. 2002); and Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, Immigration Law and Procedure § 51.03 (rev. ed. 2001)).

Here, the last time Petitioner entered the United States, in 1988, his entry did follow inspection and authorization by an immigration officer, but at that time he had only temporary resident status. Petitioner did not receive lawful permanent resident status until his adjustment in 1990 and has not "lawfully entered into the United States after inspection and authorization by an immigration officer" since that date. As such, he argues that he has never had an "admission" within the plain meaning of section 212(h), and therefore remains eligible to seek a waiver of inadmissibility.

We agree that this reading accords section 212(h) its plain meaning and properly utilizes the definitions of terms Congress provided in the INA, as codified at 8 U.S.C. § 1101. "Admission" and "admitted" are defined as "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Clearly, neither term includes an adjustment of status; instead, both contemplate a physical crossing of the border following the sanction and approval of United States authorities.

Further, "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant." *Id.* § 1101(a)(20). Thus, using these statutory definitions, the relevant portion of section 212(h) could be rewritten as:

> No waiver shall be granted under this subsection in the case of an alien who has previously *lawfully entered into the United States after inspection and authorization by an immigration officer as an alien with the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant* if . . . since the date of such admission the alien has been convicted of an aggravated felony.

As such, an alien with lawful permanent resident status who has entered the United States legally, following inspection by an immigration officer, and is subsequently convicted of an aggravated felony, is statutorily ineligible for a section 212(h) waiver. With respect to other aliens, however, the Attorney General retains the discretion to grant a waiver of inadmissibility to "an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if . . . the alien's denial of admission would result in extreme hardship to the United States citizen[.]" 8 U.S.C. 1182(h)(1)(B).

The Government asks us to treat Petitioner's 1990 adjustment of status as an "admission" for purposes of section 212(h), arguing that the "inspection and authorization" mentioned in section 101(a)(13)(A) could refer to the adjustment process. Moreover, according to the Government, the statutory bar to a section 212(h) waiver should apply to any and all aliens with lawful permanent resident status who commit aggravated felonies. However, that approach would require us to ignore the plain meaning of the first phrase of the definition, "the lawful *entry* of the alien *into* the United States," which is in turn modified by the "inspection and authorization" language. *See Lanier v. United States Att'y Gen.*, 631 F.3d 1363, 1366 (11th Cir. 2011) ("By including the additional condition of having 'previously been admitted' as a lawful permanent resident, Congress has narrowed the class of lawful permanent residents who are barred from seeking this waiver."). Put another way, if Congress intended section 212(h) to bar *all* "alien[s] lawfully admitted for permanent residence," there would have been no need to include the phrase "previously . . . admitted into the United States."

In fact, this Court has addressed the meaning of "admission," though only in the context of removal pursuant to INA § 237(a)(2)(A)(i), for committing a crime of moral turpitude within five years of an alien's "date of admission." *Aremu v. Dep't of Homeland Sec.*, 450 F.3d 578, 579 (4th Cir. 2006).

In *Aremu*, we applied the *Chevron* doctrine and determined that, using the definition of "admission" provided in INA § 101(a)(13)(A), section 237 is plain and unambiguous, and "the date of adjustment of status does not qualify as 'the date of admission' under that provision." *Id.* at 579-81.

Similar to *Aremu*, the BIA's interpretation of section 212(h) in the instant case fails the first prong of the *Chevron* test, as "Congress has directly spoken to the precise question at issue," and the statutory bar to a waiver of inadmissibility is not ambiguous with respect to whom it applies. However, in its decision and order, the BIA asserted that "Congress did not intend . . . to disrupt the settled principle that adjustment of status and inspection and admission were functionally equivalent" or "to differentiate section 212(h) waiver eligibility based upon the procedural mechanism under which an alien becomes a lawful permanent resident." J.A. 65.[4]

Regardless of the BIA's speculation concerning congressional intent, however, the statute plainly says what it says, and the fact remains that the definition of "admission" provided by Congress simply does not include an adjustment of status. 8 U.S.C. § 1101(a)(13)(A); *Aremu*, 450 F.3d at 581; *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

In the face of a statute's unambiguous language, the BIA may not make its own administrative amendments, and "[a]s a court, . . . , we are obliged to give effect to the statutes as they are written and enacted." *Aremu*, 450 F.3d at 583 n.6; *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." (quoting *Chevron*, 467

---

[4]Citations to the joint appendix are abbreviated as "J.A."

U.S. at 843 n.9)); *see also La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 376 (1986) ("[O]nly Congress can rewrite [a] statute.").

Our holding likewise comports with similar rulings in the Fifth, Ninth, and Eleventh Circuits. *See Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008) ("[F]or the § 212(h) bar to apply: when the alien is granted permission, after inspection, to enter the United States, he must then be admitted as [a lawful permanent resident]. Accordingly, we find no basis for the statutory language's being ambiguous."); *Hing Sum v. Holder*, 602 F.3d 1092, 1101 (9th Cir. 2010) ("Procedure, and not substance, is determinative of an 'admission' into the United States under §§ 1101(a)(13)(A) and 212(h). The text, structure, and history of the statute confirm that the terms 'admission' and 'admitted' as used in §§ 1101(a)(13)(A) and 212(h) refer to inspection and authorization by an immigration officer at the port of entry."); *Lanier*, 631 F.3d at 1366-67 ("[W]hen the statutory provision is read as a whole, the plain language of § 212(h) provides that a person must have physically entered the United States, after inspection, as a lawful permanent resident in order to have 'previously been admitted to the United States as an alien lawfully admitted for permanent residence.' Based on this unambiguous text, we find that the statutory bar to relief does not apply to those persons who . . . adjusted to lawful permanent resident status while already living in the United States.").

We note as well that the BIA has previously found the text of section 212(h) to be plain and unambiguous. In *In re Michel*, the BIA considered the appeal of an alien who had been present in the United States for close to ten years, without ever having been admitted or paroled, and was convicted of an aggravated felony. 21 I. & N. Dec. 1101, 1101 (BIA 1998) (en banc). Following removal proceedings, the alien claimed on appeal that he was eligible for adjustment of status and a waiver of inadmissibility under section 212(h). *Id.* at 1102. Notably, although the facts presented in this case are

admittedly different, as Petitioner has previously been admitted to the United States, albeit as a temporary resident, the BIA recognized the lack of ambiguity:

> . . . [T]he respondent has not previously been admitted to the United States as an alien lawfully admitted for permanent residence. Section 212(h) of the Act, while specifically precluding waiver eligibility for a lawful permanent resident who has been convicted of an aggravated felony, *imposes no such restriction on one who has not been admitted previously as a lawful permanent resident.*
>
> In this regard, *we find that the language of the statute is clear and unambiguous.* Where the language of a statute is clear, as it is here, the unambiguously expressed intent of Congress must be given effect.

*Id.* at 1104 (emphases added).

Likewise, though the Government points us to the BIA's more recent decision in *In re Koljenovic*, we note that the alien in that case, as in *Michel*, effectively had *no* admission at all unless his adjustment of status was used as the relevant date of admission. 25 I. & N. 219, 223 (BIA 2010). Although the BIA speculated that Congress did not intend to distinguish between those aliens who enter with lawful permanent resident status and those who adjusted post-entry to lawful permanent resident status, its holding rested instead on the factual determination of whether an alien had any previous *entry* that could be used as a "date of admission." *Id.* at 222; *see also In re Rosas-Ramirez*, 22 I. & N. Dec. 616, 617-18, 623 (BIA 1999) (en banc) (recognizing, in the case of an alien with no lawful entry into the United States, that "it is less clear that such a change in status can be characterized as an 'entry' into the United States" but holding that the adjustment

of status should nevertheless be treated as an "admission" or else the alien would have none at all).

Here, in contrast to the situations presented in *Michel*, *Rosas*, and *Koljenovic*, Petitioner does have a prior lawful entry into the United States, which according to the definition provided by Congress in § 101(a)(13)(A), constitutes an "admission." In those cases, the BIA arguably needed to fill in a "gap" in the language of section 212(h) because it was entirely silent concerning how to treat an alien with *no* lawful entry at all. However, section 212(h) *does* address Petitioner's situation, that of an alien with a previous admission, prohibiting a waiver of inadmissibility only if that entry was "as an alien admitted for permanent residence." Petitioner does not meet that requirement and accordingly remains eligible for a section 212(h) waiver.

Moreover, though we take note of the Government's assertions that such a reading of section 212(h) leads to the allegedly absurd result that aliens who adjust post-entry to lawful permanent resident status receive more favorable treatment than those who enter with lawful permanent resident status, we nevertheless agree with our sister Circuits that Congress may have had rational reasons for making such a distinction. *See, e.g.*, *Martinez*, 519 F.3d at 545 (observing that "Congress may well have been taking a 'rational first step toward achieving the legitimate goal of quickly removing aliens who commit certain serious crimes from the country.'" (quoting and citing *Lara-Ruiz v. INS*, 241 F.3d 934, 947 (7th Cir. 2001))); *see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (stating that a statutory classification not involving a suspect class "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").[5]

---

[5]Despite numerous equal protection challenges to the distinction drawn under section 212(h) between illegal immigrants and those admitted as lawful permanent residents, i.e., that the former remain eligible for relief

In that vein, the Fifth Circuit averred that Congress may have "recogni[zed] that limited enforcement resources should be devoted to attacking the problem in stages" or:

> . . . might rationally have concluded that adjusted-to-[lawful permanent resident]-status aliens . . . are more deserving of being eligible for a waiver of inadmissibility [as many] entered the United States as . . . minor[s], grew up in this country, and developed ties here. [Such aliens] also went through the scrutiny of adjustment, in which [their] record[s] in the United States w[ere] examined. Congress could have concluded rationally that [these] individuals . . . are more deserving, than those who entered as [lawful permanent residents], of being eligible for the § 212(h) waiver, including likely having more citizen relatives who would be affected adversely by removal.

*Martinez*, 519 F.3d at 545. We likewise agree that—regardless of whether some might deem such a distinction "absurd"—these are rational explanations and, as such, they must be upheld. *See id.* ("What is relevant is that there are countervailing explanations for the statutory distinction between 'admitted' and 'adjustment', which are just as plausible, if not more so, than the Government's contention that

---

from removability while the latter do not, courts have consistently overruled such challenges, finding that Congress may have had a rational basis for the disparate treatment. *See, e.g., Lara-Ruiz v. INS*, 241 F.3d 934, 947 (7th Cir. 2001) ("Congress may rationally have concluded that [lawful permanent residents] who commit serious crimes . . . are uniquely poor candidates for relief from removal through the 'backdoor' of waiver of inadmissibility."); *Lukowski v. INS*, 279 F.3d 644, 647-48 (8th Cir. 2002) (same); *Moore v. Ashcroft*, 251 F.3d 919, 924-26 (11th Cir. 2001) (same); *see also Ramtulla v. Ashcroft*, 301 F.3d 202, 203-04 (4th Cir. 2002) (dismissing for lack of jurisdiction a similar equal protection challenge because it was not "substantial," implicitly because it had already been decided by several circuit courts).

such a reading would lead to an absurd result. Therefore, we are not at liberty to override the plain, unambiguous text of INA §§ 212(h) and 101(a)(13).").

If the disparate eligibility for a waiver of inadmissibility of aliens who enter with lawful permanent resident status and those who adjust post-entry to lawful permanent resident status is not what Congress intended, Congress, not this Court or the BIA, must amend the relevant language to reflect its legislative purpose. As it stands, however, the language is plain and unambiguous, meaning that our analysis ends with the first prong of *Chevron* analysis: section 212(h) bars only those aliens who have committed aggravated felonies and who have previously been admitted to the United States *with lawful permanent resident status* from seeking a waiver of inadmissibility. Because he adjusted post-entry to lawful permanent resident status, Petitioner does not fall within that statutory exclusion. Accordingly, we grant Petitioner's petition for review and vacate the BIA's order of removal.

B.

Next, Petitioner contends that the BIA abused its discretion by denying his motion to remand and precluding him from seeking additional relief under the Convention Against Torture, by denying his motion to reconsider, and by denying him a stay of removal. We dismiss these arguments for lack of jurisdiction.

Under 8 U.S.C. § 1252(a)(2)(C), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense" such as an aggravated felony. Nevertheless, the following section provides that "[n]othing . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *Id.* § 1252(a)(2)(D).

Petitioner was found to be removable based on his having committed an aggravated felony. Thus, before considering the merits of Petitioner's claims, we must determine whether he raises questions of law, over which we retain jurisdiction, or questions of fact or discretionary decisions, over which we have none. *Saintha*, 516 F.3d at 248.

Here, the BIA decisions challenged by Petitioner, save for the ruling addressed above that he was statutorily ineligible to seek a waiver of inadmissibility under section 212(h), were either discretionary in nature or otherwise based on non-reviewable underlying factual determinations. *See id.* at 250 (finding that Convention Against Torture determinations are reviewed under the substantial evidence standard, which is not reviewable in the case of the removal of an alien convicted of an aggravated felony because of 8 U.S.C. § 1252(a)(2)(C)); *Hussain v. Gonzales*, 477 F.3d 153, 155 (4th Cir. 2007) (noting that the denial of a motion to remand is a discretionary decision); *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009) ("We review a denial of a motion to reconsider for an abuse of discretion." (citation omitted)). Accordingly, we have no jurisdiction to review these claims. 8 U.S.C. § 1252(a)(2)(C); *Saintha*, 516 F.3d at 248.

Moreover, Petitioner's position that the denial of an opportunity to present his Convention Against Torture claims is legal, rather than factual, in nature, is unavailing. The BIA made a factual determination that Petitioner had failed to present new evidence related to the Convention Against Torture that he was unable to offer at the earlier proceedings. This Court may not now revisit that decision, as it does not implicate a question of law.

In addition, in light of our holding above regarding Petitioner's eligibility to seek a waiver of inadmissibility under section 212(h), his appeal of the denial of his motion for a stay of removal is essentially moot.

### III.

In conclusion, we find that the relevant language of section 212(h) is unambiguous, and that therefore the BIA decision is not entitled to *Chevron* deference. Section 212(h) plainly provides that Petitioner is not statutorily barred from seeking a waiver of inadmissibility. Accordingly, we grant the petition for review, vacate the order of removal, and remand this case to the BIA for further proceedings and determination of the discretionary decision to grant Petitioner a section 212(h) waiver. Petitioner's remaining claims are dismissed for lack of jurisdiction.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED IN PART*
*AND DISMISSED IN PART*

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

I concur in Part II.B of the majority's opinion, holding that we lack jurisdiction to entertain objections to various discretionary determinations of the Board of Immigration Appeals ("BIA"). But I dissent from Part II.A. While the majority has perhaps set forth a plausible construction of § 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h), its construction is not the only, or even the most, plausible construction. Indeed, I conclude that the different construction given to § 212(h) by the BIA is not only plausible but is more consistent with the other provisions of the INA. But choosing the best construction is not our task. When a statute yields two plausible constructions, we should defer to the agency, especially when the statute pertains to immigration matters. *See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). Accordingly I would affirm.

I

Bracamontes, a native of Mexico who illegally entered the United States in 1976 when he was two, was granted temporary resident status in 1987. Shortly thereafter, in June 1988, Bracamontes left the United States for a short visit to Mexico, returning as a lawful temporary resident. After returning, in May 1990, Bracamontes' status was adjusted to that of a lawful permanent resident.

In 1999, Bracamontes pleaded guilty to a Virginia state charge of malicious wounding, for which he served several years in prison. After his discharge, he married a United States citizen, with whom he has had three children, now teenagers.

In 2009, the Department of Homeland Security ("DHS") commenced removal proceedings against Bracamontes because he was an alien who, after admission, was convicted of an aggravated felony. While Bracamontes conceded removability, he indicated that he would apply for an adjustment of status as the husband of a U.S. citizen and for a waiver under § 212(h) of the application of his aggravated felony, which otherwise would require his removal. The DHS sought to pretermit Bracamontes' applications for adjustment of status and waiver under § 212(h) because he was ineligible for a waiver according to the BIA's construction of § 212(h). The immigration judge granted DHS's motion to pretermit Bracamontes' applications, and the BIA affirmed.

Bracamontes now seeks a petition for review, arguing that he qualified for a waiver under § 212(h), contrary to the BIA's interpretation of that section.

II

The issue in this case turns on the proper construction of § 212(h) to determine whether Bracamontes qualifies for a

waiver of the application of his aggravated felony conviction. The controlling language of § 212(h) states:

> No waiver shall be granted under this subsection in the case of an alien *who has previously been admitted to the United States as an alien lawfully admitted for permanent residence* if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . .

8 U.S.C. § 1182(h) (emphasis added).

The DHS contends that the language denying waiver to an "alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence" includes an alien *whose status has been adjusted* to that of lawful permanent resident. It relies not only on the definition of "lawfully admitted for permanent residence," *see* INA § 101(a)(20), 8 U.S.C. § 1101(a)(20), which means "the *status* of having been lawfully accorded the privilege of residing permanently in the United States" (emphasis added), but also the BIA's established position, as reflected in *Matter of Koljenovic*, 25 I. & N. Dec. 219 (BIA 2010).

Bracamontes, on the other hand, contends that the language denying waiver applies only to aliens "admitted" at the border as a lawful permanent resident, i.e., an alien who has entered the United States as a lawful resident alien, as "admitted" is defined in INA § 101(a)(13)(A). Specifically, that provision defines "admitted" as "the lawful *entry* of the alien into the United States after inspection and authorization by an immigration officer" (emphasis added). He argues that because he never *entered* the United States *as a lawful permanent resident*, but rather in 1988 as a *lawful temporary resident*, the waiver bar does not apply to him.

The majority opinion recognizes that if § 212(h) is ambiguous, we should defer to the BIA under the *Chevron* doctrine

and that such deference is "especially appropriate" with respect to immigration matters. *Ante*, at 6. But it reads § 212(h) to be *unambiguous*, and its unambiguous reading is contrary to the one that has been adopted by the BIA. The majority states, "the definition of 'admission' provided by Congress simply does not include an adjustment of status." *Ante*, at 10. The majority's basis for finding the "plain meaning" turns on the fact that § 212(h) uses the stand-alone term "admitted," which is defined by § 101(a)(13)(A) in terms of "entry." *See ante*, at 7-8. Most of the majority opinion proceeds as though this proposition was obvious. *See*, *e.g.*, *ante*, at 10 ("[T]he statute plainly says what it says"). Indeed, the majority even proposes its own rewording of § 212(h) to incorporate the § 101(a)(13)(A) definition. *See ante*, at 8.

This approach, however, fails to recognize that another construction of § 212(h) can be made that is just as plausible and that is probably more rational in the larger context of the INA. Section 212(h) uses not only the defined terms "admitted" and "admission," which are defined in § 101(a)(13)(A) to refer to the lawful *entry* of the alien after inspection, but it also uses the term "admitted" in the more specific phrase "lawfully admitted for permanent residence," which is defined in § 101(a)(20) to refer to an *adjustment of status*. Thus, the list of definitions contained in § 101(a) includes a definition for "admitted" standing alone to refer to "entry" and a definition of "admitted" as included in the phrase "lawfully admitted for permanent residence" to refer to "status"—more particularly "the *status* of having been lawfully accorded the privilege of residing permanently in the United States." 8 U.S.C. § 1101(a)(20) (emphasis added). Of course, this definition of "lawfully admitted for permanent residence" accurately describes Bracamontes' circumstances because he became a lawful permanent resident by an adjustment of status in 1990.

The BIA has recognized the ambiguity of § 212(h) created by the two different definitions of "admitted"—one defining

"admitted" to refer to "entry" and the other defining "admitted" to refer to "status." But it resolved the ambiguity to read § 212(h) to be consistent with other provisions of the INA and with the apparent intent of Congress. The BIA did not find the problem to be insurmountable, because "[a]djustment of status is essentially a proxy for inspection and permission to enter at the border, which is given as a matter of administrative grace." *Koljenovic*, 25 I. & N. Dec. at 221; *see also Matter of Rainford*, 20 I. & N. Dec. 598, 601 (BIA 1992) ("As we have repeatedly held, an adjustment of status is merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States").

The BIA has also catalogued a litany of interpretive and policy reasons to support its construction, including the absurdity that would result if individuals who were never admitted at the border, but who later adjusted to lawful permanent resident status, are deemed "lawfully *admitted* for permanent residence" under § 101(a)(20), but not "admitted" despite the fact that the word "admitted" appears in the phrase "lawfully admitted for permanent residence." *See Koljenovic*, 25 I. & N. Dec. at 222.

Rather than rejecting *Koljenovic* outright, as its construction of § 212(h) would require, the majority attempts to draw a distinction. It explains that *Koljenovic* involved an alien who had never legally entered at the border (and who therefore was never "admitted" as the term is defined in § 101(a)(13)(A)), whereas the case now before us involves an alien who legally entered (and was "admitted") with temporary status and who later adjusted to lawful permanent resident status without reentry. *See ante*, at 12-13. Thus, the majority allows that, if an alien with lawful permanent resident status has *never* previously been legally admitted at the border, the words "admitted" and "date of . . . admission" in § 212(h) must be defined in terms of adjustment of status, as used in § 101(a)(20), rather than physical entry at the border, as used at § 101(a)(13)(A). The majority's concession is a

sensible one, but it is also fatal to its entire analysis. It proves that the linguistic necessity of construing "admitted" in § 212(h) by reference to § 101(a)(13)(A) is not so obvious after all, and it directly subverts the majority's bold attempt to reword § 212(h) to fit its "unambiguous" interpretation.

Another consideration that weighs strongly in favor of the BIA's approach is that Congress gave "no indication that [it] intended the limitations it built into section 212(h) to apply to those aliens whose previous admission to lawful permanent resident status occurred through the overseas consular process, but not to the majority of aliens whose admission occurred through adjustment of status." *Koljenovic*, 25 I. & N. Dec. at 224. It is difficult to fathom why Congress would have wished to bar aliens who *lawfully entered* the United States with lawful permanent resident status from reaping the benefits of § 212(h) while permitting aliens who *illegally entered* the country from doing so. The resulting incentives would be exactly backwards. Despite an effort to rationalize this distinction, the majority leaves us with little more than a reassurance that its construction of § 212(h) would survive rational basis scrutiny. *See ante*, at 13-14 & n.5.

Indeed, it may be noted that in rejecting the BIA's holding in *Koljenovic*, the majority has created even a more serious problem than it has acknowledged. As the majority construes it, § 212(h) not only rewards illegal entrants over legal ones, but it also rewards a subset of legal entrants over another subset of legal entrants, with no discernable reason. Specifically, the majority's approach rewards those such as Bracamontes, who lawfully entered the United States in 1988 having no lawful permanent resident status and subsequently adjusted to lawful permanent residence status, over those who lawfully entered with lawful permanent resident status in the first place.

Were we given the choice as to which construction of § 212(h) should be applied, we should undoubtedly find the

BIA's construction far more satisfactory in that it not only satisfies the reasonableness standard but also gives full effect to Congress' purposes in view of the "overall structure of the Act." *Koljenovic*, 25 I. & N. Dec. at 224; *cf. Schafer v. Astrue*, 641 F.3d 49, 57-58 (4th Cir. 2011) (reviewing congressional purpose and legislative history at *Chevron* step one). But what we would choose on the matter is quite irrelevant. Presented with the indisputable ambiguity of § 212(h), we must defer to the BIA under the principles of *Chevron*.

*Chevron* deference lies at "the heart of modern administrative law" because it "ensures that agency officials, who are subject to greater political accountability and possess greater relevant expertise than judges, take the lead in implementing programs delegated to their care." *Schafer*, 641 F.3d at 61. These considerations have special force in relation to the INA, because immigration law involves "especially sensitive political functions that implicate questions of foreign relations." *Aguirre-Aguirre*, 526 U.S. at 425. Thus, it does not matter whether we agree with the BIA's construction of the INA. *See Saintha v. Mukasey*, 516 F.3d 243, 253 (4th Cir. 2008). If the statute is "ambiguous" with respect to the interpretive question presented, then we must defer to the agency's approach so long as it is "reasonable." *Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 504 (4th Cir. 2011).

Because § 212(h) is indisputably ambiguous and because the BIA's resolution of the ambiguity is reasonable, I would defer to the BIA and accordingly affirm.