**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1184
_____

PETER JEFFETH GORDON,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A047-924-776)
Immigration Judge:  Kelley Fowler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 18, 2020

Before: SHWARTZ, RESTREPO and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 21, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Peter Jeffeth Gordon is a citizen of Jamaica. He filed a petition for review (PFR) of a final order of removal issued by the Board of Immigration Appeals (BIA). The PFR will be granted.

I.

Between his entering the United States in 2001 and adjusting to LPR status a few years later, Gordon was convicted in Pennsylvania state court of retail theft in violation of 18 Pa. Const. Stat. § 3929(a)(1). Later on, Gordon was convicted in Pennsylvania state court of, inter alia, theft by deception in violation of 18 Pa. Const. Stat. § 3922. As a result of his criminal convictions, Gordon was served with a notice to appear charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(ii) (concerning multiple crimes involving moral turpitude), and 8 U.S.C. §§ 1227(a)(2)(A)(iii) (concerning aggravated felonies) and 1101(a)(43)(M)(i) (defining "aggravated felony" as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000"). An immigration judge (IJ) sustained the charges.

To block his removal Gordon applied for asylum, withholding of removal under the Immigration and Nationality Act (INA), and relief under the Convention Against Torture (CAT). Gordon claimed that if removed he would be harmed on account of his sexual orientation and, to a lesser extent, his political affiliation.

The IJ made an adverse credibility finding and denied relief. The BIA sustained Gordon's appeal and remanded proceedings. The BIA determined that the IJ did not

2

support his conclusions as to credibility and discretionary relief with clear fact-finding and record cites. A new IJ was assigned on remand.

The new IJ held a hearing and then denied relief. The IJ determined that Gordon's aggravated felony conviction made him ineligible for asylum. The IJ also determined— based on an adverse credibility finding rooted in various material inconsistencies between Gordon's latest testimony on the one hand, and the documentary evidence and his prior testimony on the other—that Gordon was not entitled to withholding of removal under the INA. The IJ found no objective, credible evidence that Gordon is bisexual or that he was attacked while visiting Jamaica in 2014. Finally, the IJ determined that Gordon was not entitled to CAT relief because there was no evidence of past torture and no evidence that the Jamaican government would acquiesce to future torture.

The BIA affirmed. It agreed with the IJ's aggravated felony determination, and concluded that the IJ's adverse credibility determination was not clearly erroneous. The BIA also agreed with the IJ that the statutory withholding claim failed for want of proof, given Gordon's lack of credibility. The BIA declined to remand based on newly presented evidence of Gordon's memory loss (his explanation for testifying so poorly), observing that the evidence did not corroborate his alleged mental incompetency.

Finally, the BIA rejected Gordon's CAT claim based on two conclusions. First, the BIA concluded that an incident of past harm described by Gordon did not rise to the level of torture. Second, and assuming the testimony in the record was credible, the BIA

3

concluded that Gordon failed to establish that any future harm "would be by or at the instigation of or with the consent or acquiescence, including willful blindness, of a public official or other person acting in an official capacity." AR 3.

Gordon then filed his PFR. A panel of this Court granted Gordon's unopposed motion to stay removal pending disposition of the PFR.

II.

Under 8 U.S.C. § 1252(a)(1), we have jurisdiction to review a final order of removal. When a noncitizen is ordered removed for having been convicted of an aggravated felony, though, our review is limited to constitutional issues, questions of law, and mixed questions of law and fact (i.e., pure factual issues are off limits). See 8 U.S.C. §§ 1252(a)(2)(C)-(D); Guerrero-Lasprilla v. Barr, 589 U.S. ----, 140 S. Ct. 1062, 1067 (2020). The foregoing limitation applies to Gordon.[1] We thus lack jurisdiction to consider his arguments regarding the factual bases of the BIA's credibility and remand rulings. See Br. 3-5, 8-11; cf. Bracamontes v. Holder, 675 F.3d 380, 390 (4th Cir. 2012).

Regarding Gordon's assertions of error in the BIA's CAT ruling, see Br. 6-8, however, we reach a different conclusion. The Supreme Court recently explained:

> A CAT order may be reviewed together with the final order of removal. But a CAT order is distinct from a final order of removal and does not affect the validity of the final order of removal. The CAT order therefore does not merge into the final order of removal for purposes of §§ 1252(a)(2)(C)–(D)'s limitation on the scope of judicial review.

---

[1] Gordon does not contest the determination that he is removable as an aggravated felon.

4

Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020).

Accordingly, in addition to our ability to consider relevant questions of law concerning the CAT ruling here, we may review factual challenges thereto. Such review employs the deferential substantial evidence standard: The agency's factual findings are conclusive unless any reasonable adjudicator would be compelled to reach a contrary conclusion. See id. With that standard in mind, we proceed to consideration of Gordon's CAT claim.[2]

## III.

To obtain CAT relief, Gordon was tasked with demonstrating that, if removed, he would likely be tortured "by or at the instigation of or with the consent or acquiescence of" a Jamaican public official. 8 C.F.R. § 1208.16(c)(2); § 1208.18(a)(1); Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002). That demonstration must rely on objective evidence. Kamara v. Att'y Gen., 420 F.3d 202, 213 (3d Cir. 2005).

As for the IJ's and BIA's jobs in evaluating Gordon's CAT claim, they were to use the two-pronged inquiry set forth in Myrie v. Attorney General, 855 F.3d 509, 516 (3d Cir. 2017), which we reiterate here. "First, the agency must determine whether an applicant has met the burden of establishing that it is more likely than not [the alien]

---

[2] Insofar as the BIA expressly adopted the IJ's decision and reasoning pursuant to Matter of Burbano, 20 I. & N. Dec. 872 (BIA 1994), see AR 2, we review the decisions of both the IJ and the BIA to determine whether the BIA's decision to defer to the IJ was appropriate, see Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007).

would be tortured if removed." Quinteros v. Att'y Gen., 945 F.3d 772, 786 (3d Cir. 2019) (citation and internal quotations omitted). And "[s]econd, the agency asks whether public officials will acquiesce in the likely treatment." Id.

As noted above, the BIA's CAT ruling rested on two pillars: its conclusion that Gordon's evidence of past harm did not amount to torture, and its factual determination that the record lacked evidence any future harm suffered by Gordon would be inflicted directly by the Jamaican government or instead with its acquiescence. Critically, the BIA did not rely on the IJ's adverse credibility determination; it assumed that Gordon's testimony was credible for purposes of its CAT analysis.[3] And that analysis, we now conclude, is defective.[4] We will thus grant the PFR.

As a preliminary matter, we acknowledge that the BIA, in drafting it decision, is not obligated to address every document in the administrative record. Guzman Orellana v. Att'y Gen., 956 F.3d 171, 182 (3d Cir. 2020). But here, the BIA did not discuss *any*

_____

[3] We do not hypothesize how this case would come out had the BIA deferred to the IJ's adverse credibility determination for the purposes of ruling on Gordon's CAT claim. We review only what the agency did or did not do, not what it might have done. See Dia v. Ashcroft, 353 F.3d 228, 241 (3d Cir. 2003) (en banc).

[4] That said, we agree with the BIA's non-dispositive conclusion that Gordon's past harm—during a trip to Jamaica in 2014, three men unaffiliated with the government "abducted" him and struck him with a machete, see AR 76—did not rise meet the legal definition of torture. See Auguste v. Ridge, 395 F.3d 123, 151-54 (3d Cir. 2005).

document in the administrative record bearing on acquiescence.[5]  And the IJ's

consideration of the issue was only a bit more searching.  The IJ found: "While the Court

understands that consensual sex between males is illegal in the respondent's native

country, evidence in the record indicates that those laws are not often enforced." AR 34.

A finding that the Jamaican government may decline to prosecute Gordon for

same-sex relations, however, is not responsive to Gordon's claim that the government

will acquiesce to his torture by private actors.  Thus, there is virtually nothing in either of

the agency decisions to bolster the BIA's acquiescence ruling.  In short, that ruling is not

supported by substantial evidence.  As a result, we will send the case back to the BIA for

it to reexamine Gordon's CAT claim. Cf. Quinteros, 945 F.3d at 788 ("[N]either the IJ

---

[5] For example, the BIA did not consider:  (1) the germaneness of Jamaica's 'anti-buggery' law to an assessment of the government's prospective indifference to harm against members of the LGBT+ community; (2) the 2017 Human Rights Report, which indicates that "societal violence against lesbian, gay, bisexual, transgender, and intersex (LGBTI) persons" is one of the "most significant human rights issues" in the country, AR 513, that "[h]omophobia was widespread in the country," AR 525, and that an NGO collected reports over nine months of almost two dozen human rights violations concerning LGBT+ persons, including "six cases in which police failed to respond adequately to [such] reports," AR 525; (3) evidence that "Jamaica is a deeply homophobic society and there are reports of LGBT persons facing a high level of both physical and sexual violence from non-state agents (and some rogue state agents) and many live in constant fear.  LGBT persons are targeted for mob violence, 'corrective rape', extortion, harassment, forced displacement and discrimination, and are taunted, threatened, fired from their jobs, thrown out of their homes, and suffer ill-treatment including being beaten, stoned, raped, or killed," AR 543; and (4) evidence that "[w]here LGBT persons do face a real risk of harm or ill-treatment by non-state actors, the authorities do not provide effective protection," AR 547.

nor the Board came to a decision about how public officials would likely respond to the treatment that Quinteros feared.  That requires a remand.").

## IV.

For the reasons given above, we will grant the PFR, vacate the BIA's removal order, and remand for proceedings consistent with this opinion.