RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name:  07a0466p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

YIN ZHANG,

*Petitioner,*

*v.*

No. 06-3665

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

>

On Appeal from the Board
of Immigration Appeals.
No. A77 424 267.

Argued:  September 18, 2007

Decided and Filed:  November 29, 2007

Before:  BATCHELDER and GILMAN, Circuit Judges; VARLAN, District Judge.[*]

---

### COUNSEL

**ARGUED:**  Russell R. Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner.  Aviva L. Poczter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Russell R. Abrutyn, Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner.  Aviva L. Poczter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

### OPINION

---

ALICE M. BATCHELDER, Circuit Judge.  At issue in this case is whether an adjustment of status constitutes an "admission" for purposes of 8 U.S.C. § 1227(a)(2)(A)(i), as the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) held.  Finding that it does not, we GRANT the petition for review, VACATE the removal order, and REMAND for a new hearing.

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

**I.**

Ms. Yin Zhang, a Chinese national, was admitted to the United States in 1994 as an F-2 nonimmigrant student so that she could join her husband, Yimin Xiao. Mr. Xiao had arrived on an F-1 visa just two months before the birth of their first child, Boning. Boning was born in China but came to the United States with Ms. Zhang. Ms. Zhang and Mr. Xiao later had a second child, Jeffrey, here in the United States.

Mr. Xiao is employed in the Department of Statistics and Probability at Michigan State University in East Lansing, Michigan. This appears to be his fourth university since his arrival in 1993. Ms. Zhang speaks reasonably fluent English and lists her present employment as a Scoring Supervisor at Pearson Educational Measurement in Lansing, Michigan. In May 2000, Ms. Zhang's status — as well as Mr. Xiao's — was adjusted to Lawful Permanent Resident.

On June 10, 2001, Ms. Zhang committed a felonious assault. Other than the fact that the assault involved a "meat cleaver," the record contains almost no information regarding the specifics of the incident. She was convicted, apparently on a guilty plea, and the state court sentenced her to 360 days in jail and 360 days of probation. She apparently spent some time in jail, because the record reflects that her "jail counselor" later testified that Ms. Zhang "is rehabilitated and remorseful." But she may not have served the entire sentence, because she was convicted on February 5, 2003, and released from probation and deemed to have completed her sentence on September 25, 2003 (by our count, 232 days).

Meanwhile, on August 5, 2003, the Department of Homeland Security (DHS) issued Ms. Zhang a Notice to Appear, initiating removal proceedings on the basis that she was removable under 8 U.S.C. § 1227(a)(2)(A)(i) as a non-citizen convicted of a crime involving moral turpitude carrying a penalty of incarceration for one year or more, that was committed within five years of admission to the United States. Ms. Zhang protested that she had been admitted on April 29, 1994, and had committed the crime on June 10, 2001, which was therefore more than five years after her date of admission. The DHS responded that an "adjustment of status" can also be considered an "admission," and that the crime was within five years of her May 19, 2000, adjustment of status. The IJ agreed with the DHS and on November 2, 2004, ordered Ms. Zhang removed to China.

Ms. Zhang appealed to the BIA, which eventually affirmed the IJ. In June 2005, while that appeal was pending, Ms. Zhang moved the BIA to remand the proceedings to the Immigration Court to permit her to apply for cancellation of removal, pursuant to 8 U.S.C. § 1229b(a), on the basis that she (1) had been a lawful permanent resident for five or more years (May 2000 until June 2005), (2) had seven years continuous residence in the United States (April 1994 to June 2005), and (3) had not been convicted of an *aggravated* felony. The BIA decided that Ms. Zhang was not statutorily eligible for cancellation of removal, "insofar as she had not been an alien lawfully admitted for permanent residence for not less than five years *at that time*" (emphasis added), i.e., as of November 2, 2004, the time of the IJ's decision. Ms. Zhang filed a timely petition for review.

**II.**

We conduct a *de novo* review of questions of law, but we "defer to the BIA's reasonable interpretations of the [Immigration and Nationality Act (INA)]." *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006) (citing *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005)). The IJ's factual findings are reviewed under the substantial evidence standard. *Id.* (citing 8 U.S.C. §1252(b)(4)(B)).

At issue here is whether — as the government contends — an adjustment of status constitutes an "admission" for purposes of calculating the five-year time period in 8 U.S.C. § 1227(a)(2)(A)(i), or whether — as Ms. Zhang contends — only the first lawful admission into the United States (in

this case, Ms. Zhang's April 1994 arrival and F-2 nonimmigrant student visa) may be used to calculate that time period.  The relevant provision of the INA states:

> Any alien who (1) is convicted of a crime involving moral turpitude (2) committed within five years [] after the date of admission, and (3) [] for which a sentence of one year or longer may be imposed, is deportable.

8 U.S.C. § 1227(a)(2)(A)(i) (provisions renumbered from original).  "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

Ms. Zhang argues that the plain language of the statute dictates that her date of admission was April 29, 1994, because that is "*the* date," § 1227(a)(2)(A)(i) (emphasis added), of her "*lawful entry . . .* into the United States," § 1101(a)(13)(A) (emphasis added).  The position of the IJ and the BIA that there can be more than one date on which an alien is lawfully admitted to the country is contrary to the plain language of the statute and is not entitled to deference.

Ms. Zhang's reading of the statute is consistent with that of several of the circuits.

> Where an alien is 'admitted' to this country pursuant to the unambiguous definition set forth in section 101(a)(13)(A), and where [s]he maintains continuous lawful presence in this country thereafter, we hold that both the plain words of the statute and the intent of Congress is clear:  the 'date of admission,' for purposes of § 237(a)(2)(A)(i), is the date of the alien's lawful entry.  Under these circumstances, no deference is due to the Board's construction of the statutory term.

*Shivaraman v. Ashcroft*, 360 F.3d 1142, 1146 (9th Cir. 2004).  The Seventh Circuit has held that:

> [Petitioner] accuses the agency of engaging in word play by equating 'admitted for permanent residence' with 'the date of admission.'  The former is a legal status, the latter an entry into the United States.  Section 1101(a)(13)(A) defines admission as a lawful entry, not as a particular legal status afterward.

*Abdelqadar v. Gonzales*, 413 F.3d 668, 673 (7th Cir. 2005).  And the Fourth Circuit agrees:

> Because the statutory definition of 'admission' does not include adjustment of status, it appears that a straightforward application of *Chevron* requires us to conclude that the BIA's determination that 'the date of admission' under § 1227(a)(2)(A)(i) includes the date of an adjustment of status fails step one of the *Chevron* analysis.

*Aremu v. Dep't of Homeland Sec.*, 450 F.3d 578, 581 (4th Cir. 2006).  We find these arguments compelling and are inclined to adopt this reasoning.

The DHS relies on *In re Rosas-Ramirez*, 22 I.&N. Dec. 616 (BIA 1999), for the proposition that there can be more than one admission and that an adjustment of status can serve as an admission.  The IJ and the BIA agreed, but we conclude that this precedent is inapposite.  The *Rosas-Ramirez* petitioner had entered the U.S. illegally, and her adjustment of status signified the first point at which she was *lawfully* in the United States.  *See Shivaraman*, 360 F.3d at 1144 (distinguishing *Rosas-Ramirez* on the basis that Rosas-Ramirez had originally entered the country illegally).  And, *Rosas-Ramirez* does not hold that the adjustment of status is a new "admission." Rather, that case distinguished between "entry" and "admission," and held that the term "after admission" in 8 U.S.C. § 1227(a)(2)(A)(iii) — a different section of the statute from the one with which we are concerned here — included an alien who had entered the United States illegally (and thus had not entered after inspection and authorization) but had subsequently attained adjustment

of status to that of "an alien lawfully admitted for permanent residence." *Rosas-Ramirez*, 22 I.&N. Dec. at 619.  Consequently, *Rosa-Ramirez* does not address the issue before us here: whether an alien who first entered the United States legally, after inspection and authorization, is, for purposes of 8 U.S.C. § 1227(a)(2)(A)(i), again "admitted" upon attaining adjustment of status.  *See Abdelqadar*, 413 F.3d at 673 (explaining that *Rosas-Ramirez* is context-specific and does not apply in the context of determining when the five-year clock begins to run).

  We hold that there is only one "first lawful admission," and it is based on physical, legal entry into the United States, not on the attainment of a particular legal status.  Ms. Zhang's first lawful "admission" occurred in April 1994; she committed felonious assault more than six years later, in June 2000.  Because Ms. Zhang did not commit the felonious assault within five years of her admission, she is not deportable under 8 U.S.C. § 1227(a)(2)(A)(i).

### III.

  Based on the foregoing, we **GRANT** the petition for review, **VACATE** the decision and orders of the IJ and BIA, and **REMAND** to the BIA for reconsideration and further proceedings consistent with this opinion.