# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3359

_____

Shaun M. Roberts

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 23, 2013
Filed: March 20, 2014
[Published]

_____

Before BYE, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Petitioner Shaun Roberts seeks review of a decision of the Board of Immigration Appeals (BIA) affirming the decision of an immigration judge (IJ) ordering Roberts's removal. The IJ found Roberts statutorily ineligible for cancellation of removal, because he concluded that Roberts's prior conviction for aiding and abetting third-degree assault was an "aggravated felony." Conviction for

an "aggravated felony" renders him ineligible for cancellation of removal or waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h) . Roberts challenges that finding on two grounds. First, he argues that his prior conviction is not an "aggravated felony." Second, he contends that even if his conviction is an "aggravated felony," the ineligibility provisions of § 1182(h) do not apply to him, because he is seeking an adjustment of status, rather than admission. For the reasons stated below, we deny the petition for review.

## I. *Background*

Shaun Roberts is a native and citizen of the Bahamas. At the age of nine, he entered the United States as a non-immigrant visitor. Two years later, he adjusted his status to Lawful Permanent Resident (LPR). Now age 42, Roberts resides in Minnesota and has not left the United States since his entry.

Roberts has two criminal convictions relevant to this appeal. In 1989, he was convicted of second-degree burglary, in violation of Minnesota Statutes Annotated § 605.582. In 2000, he pleaded guilty to third-degree assault, on an aiding and abetting theory, in violation of Minnesota Statutes Annotated § 605.223 subdivision 1.

In 2011, the Department of Homeland Security (DHS) served Roberts with a Notice to Appear in immigration court. DHS charged Roberts with removability on two bases. First, he was charged as removable for having committed two post-admission crimes involving moral turpitude, pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). Second, he was charged as removable for having committed a post-admission "aggravated felony, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). In response, Roberts applied for cancellation of removal under 8 U.S.C. § 1229b(a), adjustment of status under 8 U.S.C. § 1255, and a waiver of inadmissibility under 8 U.S.C. § 1182(h).

The IJ found Roberts removable as charged and ordered his removal. The IJ concluded that third-degree assault, as defined by Minnesota law, is an "aggravated felony." Specifically, the IJ found that third-degree assault is a categorical "crime of violence" under 18 U.S.C. § 16(a). That conviction rendered Roberts ineligible for both cancellation of removal and a § 1182(h) waiver of inadmissibility. Roberts appealed to the BIA. The BIA affirmed the IJ, concluding that third-degree assault is a categorical "crime of violence" under 18 U.S.C. § 16(b). Roberts petitioned for review.

## II. *Discussion*

We lack jurisdiction to review any final order of removability against an alien convicted of, *inter alia*, an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C); *Olmsted v. Holder*, 588 F.3d 556, 558 (8th Cir. 2009). "We retain jurisdiction, however, to review constitutional claims or questions of law, such as whether a crime is an aggravated felony." *Olmstead*, 588 F.3d at 558. (quotations and citations omitted). "We review the BIA's legal determinations *de novo*, according substantial deference to the BIA's interpretation of the statutes and regulations it administers." *Id*. (quotation, alteration, and citation omitted)

## A. *Third-Degree Assault as an Aggravated Felony*

The immigration statutes provide that the Attorney General "may cancel removal" of an alien who meets certain residency requirements and "has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). For immigration and naturalization purposes, "aggravated felony" includes "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43(F).

Section 16 of Title 18 defines "crime of violence" as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The IJ found that third-degree assault constitutes a crime of violence under § 16(a). The IJ found that by virtue of resulting in "substantial bodily harm," third-degree assault involves the use or attempted use of physical force against another.

We have held that the term "crime of violence" found in § 4B1.2(a) of the United States Sentencing Guidelines is interchangeable with the term "violent felony" found in the Armed Career Criminals Act ("ACCA"), in 18 U.S.C. § 924(e)(2)(B). *United States v. Williams*, 537 F.3d 969, 971 (8th Cir. 2008) ("The present case involves the term 'crime of violence' whereas the Supreme Court in *Begay* [*v. United States*, 553 U.S. 137 (2008),] interpreted the term 'violent felony.' We have never recognized a distinction between the two."). Both terms are virtually identical to § 16.[1]

---

[1]Section 4B1.2(a) of the Guidelines provides:

(a) The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious

-4-

Under Minnesota law, third-degree assault consists of two elements: (1) an "assault" of another, (2) that inflicts "substantial bodily harm." Minn. Stat. 609.223 subd. 1. "Assault" is defined as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02 subd. 10.

Our decision in *United States v. Salean*, 583 F.3d 1059 (8th Cir. 2009) is instructive. In *Salean*, we held that fourth-degree assault under Minnesota law "falls squarely within the first clause of [18 U.S.C.] § 924(e)(2)(B)(i)," which is the ACCA counterpart to § 16(a). *Id*. at 1060. The fourth-degree assault we considered in *Salean* required (1) an assault, (2) a correctional facility employee engaged in the performance of a duty as the victim of the assault, and (3) the infliction of "demonstrable bodily harm." *Id*. (citing Minn. Stat. § 609.2231 subd. 3 (1994)). We held that because fourth-degree assault requires not merely "assault," but rather an "assault" that inflicts "demonstrable bodily harm," "the 'ordinary case' violation of this statute involve[s] the intentional use of physical force against another." *Id*.

---

potential risk of physical injury to another."

Section 924(e)(2)(B) of 18 U.S.C. defines "violent felony" as

any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

Third-degree assault requires an even higher showing of harm than fourth-degree. *See State v. Backus*, 358 N.W.2d 93, 95 (Minn. Ct. App. 1984) ("Assault in the fourth degree requires a quantum of proof of harm between 'bodily harm' (assault in the fifth degree) and 'substantial bodily harm' (assault in the third degree)."). Thus if the "ordinary case" of fourth-degree assault "involve[s] the intentional use of physical force against another," *Salean*, 583 F.3d at 1060, because of the harm element, so too must third-degree assault.[2]

We conclude that Roberts's third-degree assault conviction in Minnesota constitutes an aggravated felony, because, under Minnesota law, it "has as an element the use, attempted use, or threatened use of physical force" against another, and is therefore categorically a "crime of violence" under 8 U.S.C. § 16(a). As an aggravated felon, Roberts is statutorily ineligible for cancellation of removal, under 8 U.S.C. § 1229b(a)(3).[3]

B. *Adjustment of Status and § 1182(h) Waiver of Inadmissibility*

In connection with his removal proceedings, Roberts petitioned for adjustment of status to that of LPR. As the BIA noted, Roberts must receive a § 1182(h) waiver of his aggravated felony conviction before he may adjust his status. The question

---

[2]As we noted in *Salean*, it is irrelevant that Roberts's conviction was for aiding and abetting third-degree assault. 583 F.3d at 1060 n.2. *See also Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 189–90 (2007) (holding that an alien convicted as an "aider and abettor" to theft is removable, as every United States jurisdiction has abrogated the distinction between principals and aiders and abettors).

[3]The BIA found that third-degree assault constitutes a crime of violence under § 16(b), reasoning that an action done with either intent to cause fear of harm or intent to cause harm, which actually results in harm, necessarily involves a substantial risk that physical force may be used in committing the offense. We need not consider whether Roberts's conviction falls under § 16(b) because of our holding that it falls under § 16(a).

before the court is not whether Roberts is entitled to the waiver (that is a matter of the Attorney General's discretion), but whether he is eligible for it in the first place.

Section 1182(h)(2) of Title 8 provides in relevant part: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ."

"Admitted" and "admission" are defined in 8 U.S.C. § 1101(a)(13)(A): "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."

As noted above, Roberts was admitted as a non-immigrant visitor. Post-admission, he adjusted to LPR status. Roberts contends that the aggravated felony bar in § 1182(h) does not apply to him, because he was never "admitted" as an LPR. Roberts contends that the aggravated felony bar does not apply to those aliens who only attained LPR status post-admission.

Four of our sister circuits have adopted Roberts's reading of the statute. *See Bracamontes v. Holder*, 675 F.3d 380 (4th Cir. 2012); *Lanier v. U.S. Atty. Gen.*, 631 F.3d 1363 (11th Cir. 2011); *Martinez v. Mukasey*, 519 F.3d 532 (5th Cir. 2008); *see also Hanif v. Attorney General of U.S.*, 694 F.3d 479 (3d Cir. 2012) (reaching the same conclusion as applied to § 1182(h)'s residency requirement). These courts hold that the unambiguous language of the statute "provides that a person must have physically entered the United States, after inspection, as a lawful permanent resident" in order for the aggravated felony bar to apply. *Lanier*, 631 F.3d at 1366–67. *See also Bracamontes*, 675 F.3d at 385–86; *Martinez*, 519 F.3d at 544.

The BIA has taken a different view. According to the BIA, § 1182(h) relief is unavailable "for any alien who has been convicted of an aggravated felony after acquiring lawful permanent resident status, without regard to the manner in which such status was acquired." *Matter of Rodriguez*, 25 I. & N. Dec. 784, 789 (BIA 2012).

We respectfully disagree with our sister circuits. Reading the immigration statutes as a whole, we hold that § 1182(h) is ambiguous as to the meaning of "previously been admitted as an alien lawfully admitted for permanent residence." Consequently, we defer to the BIA's reasonable construction of the statute. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (applying *Chevron* deference to BIA construction of immigration statutes). We need not settle the meaning of the text, nor conclude that the BIA was *correct* in its construction of the statute. We need only hold that the text is ambiguous and that the BIA's construction is *reasonable*. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs*, 545 U.S. 967, 980 (2005) ("If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.") (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)).

The immigration statutes use the words "admitted" and "admission" inconsistently. Whereas § 1101(a)(13)(A) refers to port-of-entry inspection, in other sections relevant to Roberts's petition, "admitted" is not so limited. For the sake of clarity, we lay out the relevant statutory provisions here.

We begin with 8 U.S.C. § 1255(a), concerning the adjustment of status to LPR. Section 1255(a) grants the Attorney General the discretion to adjust the status of, *inter alia*, "an alien who was inspected and admitted or paroled into the United States . . . to that of an alien lawfully admitted for permanent residence." To be eligible for adjustment of status, the alien must, among other things, be "eligible to receive an

immigrant visa and [be] admissible to the United States for permanent residence." 8 U.S.C. § 1255(a).

Because § 1255(a) requires that any alien petitioning for adjustment of status be eligible to receive a visa and be admissible, we turn now to 8 U.S.C. § 1182, which describes which aliens "are inadmissible," and are therefore "ineligible to receive visas and ineligible to be admitted to the United States." Among inadmissible aliens are those "convicted of . . . acts which constitute the essential elements of a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A). Roberts is therefore an inadmissible alien, seeking adjustment of status.

Section 1182(h) grants the Attorney General the discretion to "waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2)." Roberts seeks this waiver. Section 1182(h) further provides "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony."

Section 1255(b) provides that once an alien has adjusted to LPR status under 1255(a), "the Attorney General shall record the alien's lawful *admission* for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made," and the Secretary of State shall reduce the number of available immigrant visas accordingly. (Emphasis added.).

Reading § 1182(h) in isolation, one might conclude, as our sister circuits have, that the meaning of "admitted" is clear. One might then apply the aggravated felony bar only to those who obtained LPR status at the port of entry to the United States. However, the immigration statutes as a whole—particularly those relevant to Roberts's petition—do not treat the words "admitted" and "admission" consistently. Section 1255(b) treats *adjustment itself* as an "admission" by directing the Attorney

General to record "admission" as the date the alien adjusts his status. The immigration statutes may be fairly read as treating post-entry adjustment as a substitute for port-of-entry inspection. *See Matter of Koljenovic*, 25 I. & N. Dec. 219, 221 (BIA 2010) ("Adjustment of status is essentially a proxy for inspection and permission to enter at the border, which is given as a matter of administrative grace.") *aff'd in Matter of E.W. Rodriguez*, 25 I. & N. Dec. 784 (BIA 2012). Having held that § 1182(h) is susceptible to multiple interpretations, we are obliged to defer to the BIA's reasonable construction.

Roberts also raises an equal protection challenge to the BIA's construction of § 1182(h). He argues that the BIA's decision to apply the construction of the statute adopted by the Fourth, Fifth, and Eleventh Circuits in proceedings arising in the jurisdiction of those courts—as it must—and applying its own, differing construction in all other jurisdictions violates the Equal Protection Clause. Disagreements among the courts of appeal, or between an agency and one or more of the courts of appeal, will not by itself create an equal protection violation. *See Habibi v. Holder*, 673 F.3d 1082, 1088 (9th Cir. 2011) ("No court has ever held that the mere existence of a circuit split on an issue of statutory interpretation violates due process or equal protection . . . ."). Like the Ninth Circuit, we decline the invitation to be the first to find one.

### III. *Conclusion*
Accordingly, the petition for review is denied.

———————————————