OPINION
ROGERS, Circuit Judge.
This ease raises the issue of whether an alien who has adjusted his status to that of a lawful permanent resident after being admitted to the United States on a nonimmigrant visa, and who is later subject to removal for committing an aggravated felony, may seek a hardship waiver. A provision of the Immigration and Nationality Act (“the Act”) bars such a hardship waiver for an alien admitted to the United States in the first place as an immigrant, but the bar cannot be read to extend to aliens who were lawfully admitted first as nonimmigrants and who later adjusted to immigrant status. The basis for such a distinction is very hard to see, and the Attorney General accordingly argues that the bar applies in both instances. The inescapably clear language of the statute, however, requires the conclusion that the bar does not extend to the latter situation. The decision of the Board of Immigration Appeals relying on the bar therefore cannot stand in this case.
Petitioner Stanovsek, a citizen of Australia, was admitted on a nonimmigrant visitor visa in 1990 and later adjusted status to lawful permanent resident by virtue of his marriage to a United States citizen. In September 2009, Stanovsek was convicted for the offense of aggravated theft, in violation of Ohio Rev.Code § 2913.02(A)(1), and was sentenced to three years of imprisonment. Stanovsek’s crime constituted an aggravated felony under § 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G), which defines an aggravated felony to include theft offenses for which the term of imprisonment is at least one year. Consequently, the Department of Homeland Security charged Stanovsek with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), as a noncitizen convicted of an aggravated felony after his admission to the United States.
At the removal hearing, Stanovsek conceded the charge of removability, but requested an adjustment of status and a waiver from removal under § 212(h), which applies when removal would impose “extreme hardship” on the alien’s United States citizen spouse, parent, or child. 8 U.S.C. § 1182(h). The Immigration Judge determined that Stanovsek was ineligible for a § 212(h) waiver under the BIA pree *517 edent of Matter of Rodriguez, because he was convicted of an aggravated felony after adjusting status, and the BIA affirmed the Immigration Judge’s decision on that ground. The BIA relied on the Act’s provision that:
No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if ... since the date of such admission the alien has been convicted of an aggravated felony.
8 U.S.C. § 1182(h). The BIA in Rodriguez had interpreted this language to mean that “212(h) relief is unavailable to any alien who has been convicted of an aggravated felony after acquiring lawful permanent resident status,” except in jurisdictions where controlling circuit law forbade it from doing so. Rodriguez, 25 I. & N. Dec. 784, 789 (BIA 2012).
The statutory language however is clear and unambiguous that a § 212(h) waiver is precluded after a conviction of an aggravated felony only when the removable person had attained the status of lawful permanent resident at the time of his or her lawful entry into the United States. See 8 U.S.C. § 1182(h). The Immigration and Nationality Act defines “admitted” and “admission” to mean “with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.” 8 U.S.C. § 1101(a)(13)(A) (emphasis added). “[The § 212(h) language] therefore encompasses the action of an entry into the United States, accompanied by an inspection or authorization.” Papazoglou v. Holder, 725 F.3d 790, 793 (7th Cir.2013). In addition, “lawfully admitted for permanent residence,” is statutorily defined as “the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant.” 8 U.S.C. § 1101(a)(20); see also Papazoglou, 725 F.3d at 793. “This term encompasses all [lawful permanent residents], regardless of whether they obtained that status prior to or at the time they physically entered the United States or by adjusting their status while already living in the United States.” Negrete-Ramirez v. Holder, 741 F.3d 1047, 1053 (9th Cir.2014). Thus the statutory language with the statutory definitions substituted is as follows:
No waiver shall be granted under this subsection in the case of an alien who has previously [entered into the United States after inspection and authorization by an immigration officer] as an alien [with the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant] if ... since the date of such admission the alien has been convicted of an aggravated felony.
This language cannot be stretched to bar an alien who did not enter as an alien with immigrant status, but who lawfully entered as a non-immigrant and later adjusted status. Not only does the language clearly not say that, but also such a result could quite easily have been obtained by saying something much simpler, such as:
No waiver shall be granted under this subsection in the case of a lawful permanent resident if ... since the date of obtaining such status the alien has been convicted of an aggravated felony.
This conclusion comports with holdings in the Third, Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits that “the text [of 8 U.S.C. § 1182(h) ] is unambiguous and ... the bar to seeking a § 212(h) waiver of inadmissibility does not apply to persons who adjusted to lawful permanent resident status after having entered into the United States by inspection.” Negrete-Ramirez, 741 F.3d at 1050; see also Papazoglou, 725 F.3d at 792-94; Leiba v. *518 Holder, 699 F.3d 346, 348-56 (4th Cir.2012); Hanif v. Attorney Gen., 694 F.3d 479, 483-87 (3d Cir.2012); Bracamontes v. Holder, 675 F.3d 380, 382, 384-89 (4th Cir.2012); Lanier v. U.S. Attorney Gen., 631 F.3d 1363, 1365-67 (11th Cir.2011); Martinez v. Mukasey, 519 F.3d 532, 541-46 (5th Cir.2008).
Although not on all fours, our decision in Zhang v. Mukasey, 509 F.3d 313 (6th Cir.2007), also supports this conclusion. In that case we addressed the meaning of “admission” in the context of removal under § 237(a)(2)(A)(i) of the Act, 8 U.S.C. § 1227(a)(2)(A)®, for committing a crime of moral turpitude within five years of an alien’s “date of admission.” We held that an adjustment of status to lawful permanent resident did not constitute an “admission” for purposes of 8 U.S.C. § 1227(a)(2)(A)®. 509 F.3d at 314, 316. We relied on the “unambiguous” definition of the term “admitted” set forth in 8 U.S.C. § 1101(a)(13)(A) to conclude that “there is only one ‘first lawful admission,’ and it is based on physical, legal entry into the United States.” Id. at 316. Therefore, date of “admission” is the date of the alien’s lawful entry. Id.
Moreover, this court in Zhang distinguished Matter of Rosas-Ramirez, 22 I. & N. Dec. 616 (BIA 1999), a case on which the Attorney General here relies, by explaining that, for an alien who had entered the United States illegally, as was the case in Rosas, an adjustment of status is an “admission” because an adjustment of status is the first point at which such an individual is lawfully in the United States. Zhang, 509 F.3d at 316. Thus a post-entry adjustment of status differs in its significance between individuals who had previously entered the U.S. legally, and those who had first entered the United States illegally and are only lawfully in the United Status after completing an adjustment of status. This distinction undermines the Attorney General’s “adjustment-as-admission” argument, which relies heavily on BIA precedent involving aliens who were adjusted to lawful permanent resident status without a prior lawful admission to the U.S. See, e.g., Matter of Koljenovic, 25 I. & N. Dec. 219 (BIA 2010); Rosas-Ramirez, 22 I. & N. Dec. 616 (BIA 1999); Matter of Rodarte-Roman, 23 I. & N. Dec. 905 (BIA 2006); Rodriguez, 25 I. & N. Dec. 784 (BIA 2012).
While the principles of Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), would apply to the BIA’s interpretation of the statutory provision in question, that only makes a difference if the provision is ambiguous. That is not the case here, for the reasons already given. If “Congress has directly spoken to the precise question at issue” such that “the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress.” Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778.
Ruling to the contrary, the Eighth Circuit has recently applied Chevron deference to uphold the BIA’s construction of the statutory provision in question, by finding an ambiguity from the use of the words “admitted” and “admission” in other provisions of the Act. Roberts v. Holder, 745 F.3d 928, 932 (8th Cir.2014). However, the reasoning in Roberts is not compelling. The court in Roberts reasoned that, “Heading the immigration statutes as a whole, ... [8 U.S.C.] § 1182(h) is ambiguous as to the meaning of ‘previously been admitted as an alien lawfully admitted for permanent residence,”’ because the “immigration statutes use the words ‘admitted’ and ‘admission’ inconsistently.” Id. The Roberts court pointed in particular to 8 U.S.C. § 1255(b), which provides that *519 once an alien has adjusted to lawful permanent resident status under 8 U.S.C. § 1255(a), “the Attorney General shall record the alien’s lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made,” and the Secretary of State shall reduce the number of available immigrant visas accordingly. Id. at 933 (quoting 8 U.S.C. § 1255(b)). The court in Roberts reasoned that 8 U.S.C. § 1255(b) treats adjustment itself as an “admission” by directing the Attorney General to record “admission” as of the date the alien adjusts his status, and this provision demonstrates that the immigration statutes may be fairly read as treating post-entry adjustment as a substitute for port-of-entry inspection. Id. With respect, this does not follow.[1] 8 U.S.C. § 1255(b) says that for some purposes the status of being “lawfully admitted for permanent residence” begins at the time of adjustment of status. This provision is perfectly consistent with the definition of “lawful admission” as an event occurring at the point of first lawful entry, while the status of “lawfully admitted for permanent residence” can be attained at that point of entry or at a later adjustment of status.
Thus, 8 U.S.C. § 1255(b) refers to the date an alien attains lawful permanent resident status, which aligns with other uses of that term elsewhere in the statute. As this court noted in Zhang, the position that “there can be more than one date on which an alien is lawfully admitted to the country is contrary to the plain language of the statute.” Zhang, 509 F.3d at 316-17 (interpreting 8 U.S.C. § 1227(a)(2)(A)(i)). Moreover, to conclude that 8 U.S.C. § 1182(h) is ambiguous as to the meaning of “previously been admitted as an alien lawfully admitted for permanent residence” discounts the fact that the phrase is comprised of two distinct terms, both explicitly defined in the statute — “admitted” and “lawfully admitted for permanent residence.” Each defined term adds its own meaning to that phrase: the first refers to a type of entry into this country, while the second refers to a certain status held by aliens. Together, the phrase clearly describes individuals who have [lawfully entered into the U.S. after inspection and authorization] as an alien [with lawful immigrant status]. ‘We will not interpret a statute in a manner that renders part of it irrelevant, particularly where, as here, the statute has an unambiguous meaning if we simply apply the definition provided in the statute itself.” Papazoglou, 725 F.3d at 794. The Roberts opinion also does not address the fact explained above that much simpler language would easily have achieved the BIA’s preferred interpretation.
*520 The dissent points to three provisions of the INA that involve the language an “alien ... admitted ... as an alien lawfully admitted for permanent residence”: 8 U.S.C. §§ 1151(c), 1186a, and 1186b. The Government’s brief, despite extensive argument regarding the historical backdrop, the context of neighboring words, and the language of the statute as a whole, never cites or relies upon §§ 1151(c), 1186a, or 1186b. These provisions do not support the Government’s position.
Section 1151(c), which deals with the calculation of the number of family-sponsored immigrants that can be admitted in a particular year, appears to contemplate that an alien who has been paroled into the United States under § 1182(d)(5) could subsequently be “admitted as an alien lawfully admitted for permanent residence.” 8 U.S.C. § 1151(c)(4), (5). However, § 1182(d)(5) makes explicit that parole under § 1182 “shall not be regarded as an admission of the alien.” 8 U.S.C. § 1182(d)(5). At most, § 1151(c) could be read to contemplate that someone paroled but not admitted could be later admitted as an alien lawfully admitted for permanent residence. This says nothing about an alien who has been previously admitted.
Sections 1186a and 1186b deal with aliens who have obtained the status of lawful permanent residence, based on marriage or entrepreneur status, where the status is conditioned on a determination within two years that the marriage is valid or the entrepreneur has met certain investment obligations. Sections 1186a(e) and 1186b(e) deal solely with the subsequent naturalization of such persons, as evidenced by the caption (“Treatment of period for purposes of naturalization”) and the limiting initial language of the subsections (“For purposes of subchapter III,”). Subchapter III covers “Nationality and Nationalization.” Sections 1186a(e) and 1186b(e) provide that while having LPR status on a conditional basis, the alien “For purposes of Subchapter III ... shall be considered to have been admitted as an alien lawfully admitted for permanent residence and to be in the United States as an alien lawfully admitted to the United States for permanent residence.” §§ 1186a; 1186b. At most these provisions suggest that an alien may be “considered” as having been admitted (not necessarily that the alien has been) for the limited purposes of the naturalization provisions of the INA, which impose, for instance, time requirements as an LPR before naturalization is allowed. See 8 U.S.C. § 1427(a). Stanovsek’s case does not involve naturalization at all. These provisions say nothing about the meaning of “admitted” or “as an alien lawfully admitted for permanent residence” for provisions outside of Subchapter III of the INA, including the provisions at issue in this case.
We recognize that the BIA’s interpretation of the Act would avoid a reading that appears to make little sense. Why would Congress distinguish between those who obtained lawful permanent resident status at the time of lawful entry and those who adjusted status later, for purposes of barring permanent residents who have committed aggravated felonies from discretionary hardship relief? Our inability to answer such a question does not, however, warrant expanding the scope of a statutory provision beyond a meaning as plainly limited as the one in question here. Absent a constitutional argument (none is made here), we must apply the clear meaning of the Act.
We grant the petition for review and remand this matter to the Board for further proceedings consistent with this opinion.

. The Third Circuit also rejected the argument that Congress clearly stated in 8 U.S.C. § 1255(b) that the date of the adjustment of status is the date of admission. Hanif, 694 F.3d at 485. The court held:
The date of gaining a new status is not the same as the date of the physical event of entering the country. We perceive the recording requirement of § 1255(b) to be a ministerial provision relating to the monitoring and control of the number of visas available in any given year, rather than an effort by Congress to amend the definitions of "admitted” and "lawfully admitted for permanent residence” set forth in § 1101(a).
694 F.3d at 485. See also Fayad v. Keller, 10-CV-03372-LHK, 2011 WL 884042 at *5 (N.D.Cal. Mar. 14, 2011) ("As explicitly enumerated under 8 U.S.C. § 1255(b), the Court finds that Plaintiff's LPR status began anew on the date that the second visa was issued.”); Santillan v. Gonzales, 388 F.Supp.2d 1065, 1083 (N.D.Cal.2005) (noting that “the benefits of LPR status vest in full on the date of the EOIR’s order granting status”) (citing 8 U.S.C. § 1255(b)).