PUBLISH

FILED
United States Court of Appeals
Tenth Circuit

February 24, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CARLOS JOVANY MEDINA-
ROSALES,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 14-9541

---

**PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS**

---

Submitted on the briefs:[*]

Christi J. Giddeon, Christi J. Giddeon, PLLC, Oklahoma City, Oklahoma, for
Petitioner.

Ernesto H. Molina, Jr., Assistant Director, and Sheri R. Glaser, Trial Attorney, Office
of Immigration Litigation, Civil Division, United States Department of Justice,
Washington, D.C., for Respondent.

---

Before **KELLY**, **BALDOCK**, and **MORITZ**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Carlos Jovany Medina-Rosales, a native and citizen of Mexico who adjusted his status to that of a lawful permanent resident (LPR) of the United States, petitions for review of the Board of Immigration Appeals' (BIA) decision dismissing his appeal from the Immigration Judge's (IJ) removal decision. The IJ found, and the BIA agreed, that Mr. Medina-Rosales was ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h) because he had been convicted of an aggravated felony. Based on the clear and unambiguous language of § 1182(h), we conclude that Mr. Medina-Rosales is eligible for a waiver of inadmissibility. Accordingly, we grant the petition for review and remand to the BIA with instructions to remand to the IJ for further proceedings.

## BACKGROUND

Mr. Medina-Rosales entered the United States on an unknown date. He received adjusted status as an LPR on November 27, 2001. On August 8, 2013, while residing in Oklahoma, he was convicted of grand larceny in Oklahoma state court. The following month, the Department of Homeland Security (DHS) began removal proceedings by issuing a Notice to Appear, informing him that he was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. The Notice ordered him to appear before an IJ in Dallas, Texas, even though the issuing officer was in Tulsa, Oklahoma. About two months later,

Mr. Medina-Rosales was issued a Notice of Hearing stating that a master hearing would be held before an IJ in Tulsa.

The Dallas-based IJ indeed held video conference hearings with Mr. Medina-Rosales and his counsel, who were in Tulsa.  Mr. Medina-Rosales conceded removability, but sought a waiver of inadmissibility under § 1182(h) in conjunction with an application for adjustment of status as a minor under 8 U.S.C. § 1255(a).  The IJ issued an oral decision, ordering Mr. Medina-Rosales' removal and pretermitting and denying his applications for waiver of inadmissibility and adjustment of status.  The IJ rejected his argument that Fifth Circuit law applied, deciding, instead, that Tenth Circuit law applied because the case arose in Tulsa, even though the IJ was located in Dallas and proceedings were conducted by video conference.  Next, the IJ determined that Mr. Medina-Rosales was ineligible for a waiver of inadmissibility, and, by extension, adjustment of status, because he had been convicted of the aggravated felony of grand larceny after acquiring LPR status. In making this determination, the IJ applied *In re Rodriguez*, 25 I. & N. Dec. 784, 789 (BIA 2012), which held that any alien convicted of an aggravated felony after becoming an LPR, regardless of when or how that status was acquired, is ineligible for a waiver of inadmissibility under § 1182(h).  The BIA dismissed Mr. Medina-Rosales' appeal.[1]

---

[1]     The BIA's caption notes that the file is located in Tulsa.

ANALYSIS

1.  Choice of Law

Mr. Medina-Rosales petitioned for review in this court.  *See* 8 U.S.C.
§ 1252(b)(2) ("The petition for review shall be filed with the court of appeals for the
judicial circuit in which the immigration judge completed the proceedings.").
Nevertheless, he continues to argue that Fifth Circuit law applies to his proceedings.
Fifth Circuit law, unlike *Rodriguez*, holds that LPRs who acquire that status after
living in the United States and who later are convicted of an aggravated felony are
eligible for consideration for a waiver of inadmissibility under § 1182(h).
*See Martinez v. Mukasey*, 519 F.3d 532, 541-46 (5th Cir. 2008).  The Tenth Circuit,
in contrast, has not yet considered the issue.

We review this legal, choice-of-law question de novo.  *See Fernandez-Vargas
v. Ashcroft*, 394 F.3d 881, 884 (10th Cir. 2005) (reviewing legal question de novo).
And we conclude that the agency correctly applied Tenth, not Fifth, Circuit law.

"Jurisdiction vests, and proceedings before an [IJ] commence, when" the DHS
files a charging document with the Immigration Court.  8 C.F.R. § 1003.14(a).  The
Immigration Court that creates and maintains the records for a particular geographic
area is called the Administrative Control Immigration Court.  *See id*. § 1003.11.
"When a charging document is filed with an Administrative Control Immigration
Court pursuant to . . . § 1003.11, the proceedings may actually take place in a
location other than where the charging document is filed."  U.S. Dep't of Justice,

- 4 -

Exec. Office for Immigration Rev., Office of the Chief IJ, Interim Operating Policies & Procedures Mem. No. 04-06: Hr'gs Conducted through Tel. & Video Conf., at 2 (Aug. 18, 2004), *available at* http://www.justice.gov/eoir/efoia/ocij/oppm04/04-06.pdf. The charging document establishes the hearing location, regardless of the location of the IJ and the holding of a video conference hearing. *See id.* Also, the law of the circuit where the video conference hearing is held is the applicable law. *See id.*

The Immigration Court in Dallas is the Administrative Control Immigration Court with jurisdiction over immigration proceedings in Tulsa. *See* U.S. Dep't of Justice, Office of the Chief IJ, Immigration Ct. Admin. Control List, http://www.justice.gov/eoir/vll/courts3.htm#Dallas. Thus, the charging document, the Notice to Appear, appropriately was filed in the Immigration Court in Dallas. The IJ's presence in Dallas and the fact that proceedings were conducted by video conference did not change the place of the hearings from Tulsa to Dallas. Because Tulsa is in the Tenth Circuit, Tenth Circuit law applies. *Cf. Sholla v. Gonzales*, 492 F.3d 946, 948, 950-52 (8th Cir. 2007) (applying Eighth Circuit law where venue was in Missouri, but video conference hearing was held with IJ located in Louisiana).

2.  Eligibility for a Waiver of Inadmissibility Under § 1182(h)

Agreeing that Tenth Circuit law applies, the government, however, contends that we should defer to the agency's application of the *Rodriguez* decision and its holding that Mr. Medina-Rosales was not eligible for a waiver of inadmissibility

under § 1182(h). Unlike many other circuits, we have not addressed a post-entry

LPR's eligibility to seek a waiver of inadmissibility under § 1182(h) and therefore

have not decided whether *Rodriguez* controls in the Tenth Circuit.[2]

We review issues of statutory construction de novo. *See Barrera-Quintero v.*

*Holder*, 699 F.3d 1239, 1243 (10th Cir. 2012). In doing so, we look first to the

language of the statute. If the language is not ambiguous, we need not defer to the

agency's interpretation. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002)

(citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43

(1984)).

In relevant part, § 1182(h) provides that "[n]o waiver shall be granted under

this subsection in the case of an alien who has previously been admitted to the United

States as an alien lawfully admitted for permanent residence if . . . since the date of

such admission the alien has been convicted of an aggravated felony." Eight

circuits—the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh—

have held that this language clearly and unambiguously precludes eligibility for a

waiver after conviction of an aggravated felony only if the alien received LPR status

at the time the alien lawfully entered the United States, but it does not apply to an

alien who obtained LPR status after having been present in the United States before

---

[2] In *Latu v. Ashcroft*, 375 F.3d 1012, 1020-21 (10th Cir. 2004), we upheld an
equal protection challenge to § 1182(h), recognizing that "aliens who have not been
admitted for permanent residence are eligible to apply for a waiver." The holding in
*Latu* was limited to that narrow issue.

acquiring that status. *See Husic v. Holder*, ___ F.3d ___, 2015 WL 106359, at \*2-\*8 (2nd Cir. Jan. 8, 2015); *Stanovsek v. Holder*, 768 F.3d 515, 516, 517-19 (6th Cir. 2014); *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1050-54 (9th Cir. 2014); *Papazoglou v. Holder*, 725 F.3d 790, 792-94 (7th Cir. 2013); *Leiba v. Holder*, 699 F.3d 346, 348-56 (4th Cir. 2012); *Hanif v. Att'y Gen.*, 694 F.3d 479, 483-87 (3rd Cir. 2012); *Bracamontes v. Holder*, 675 F.3d 380, 382, 384-89 (4th Cir. 2012); *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363, 1365-67 (11th Cir. 2011); *Martinez*, 519 F.3d at 541-46.

The Eighth Circuit disagrees. *See Roberts v. Holder*, 745 F.3d 928 (8th Cir. 2014) (per curiam). *Roberts* "h[e]ld that § 1182(h) is ambiguous as to the meaning of 'previously been admitted as an alien lawfully admitted for permanent residence,'" and therefore "defer[red] to the BIA's . . . construction of the statute." *Id*. at 932.

Relying on *Roberts*, the government argues that there should be no distinction between persons lawfully admitted upon first arrival and persons later adjusted to LPR status, because the immigration statutes in their entirety do not consistently use the words "admitted" and "admission." *See id*. at 932-33. Also, the government maintains that 8 U.S.C. § 1255(b) treats adjustment as an "admission" and thus the statute "'may be fairly read as treating post-entry adjustment as a substitute for port-of-entry inspection.'" Aplee. Br. at 31-33 (quoting *Roberts*, 745 F.3d at 933). We reject these arguments.

Section 1182(h) states that an alien is ineligible for a waiver if he "has previously been admitted to the United States" and he was "lawfully admitted for permanent residence." "[A]dmitted" and "admission" are defined as "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). This definition "is limited and does not encompass a post-entry adjustment of status," because it "refers expressly to *entry into* the United States, denoting by its plain terms passage into the country from abroad at a port of entry." *Negrete-Ramirez*, 741 F.3d at 1051; *see Papazoglou*, 725 F.3d at 793 ("That provision therefore encompasses the action of an entry into the United States, accompanied by an inspection or authorization."); *Bracamontes*, 675 F.3d at 385 ("Clearly, neither term includes an adjustment of status; instead, both contemplate a physical crossing of the border following the sanction and approval of United States authorities."); *Martinez*, 519 F.3d at 544 (recognizing that "'admission' is the lawful *entry* of an alien after inspection, something quite different . . . from post-entry adjustment of status"). Under the definition, Mr. Medina-Rosales was not "admitted" when he became an LPR after post-entry adjustment of status, because he did not enter the United States when he adjusted to that status.

In comparison, "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status

not having changed." 8 U.S.C. § 1101(a)(20). "This term encompasses all LPRs, regardless of whether they obtained that status prior to or at the time they physically entered the United States or by adjusting their status while already living in the United States." *Negrete-Ramirez*, 741 F.3d at 1053; *see also Lanier*, 631 F.3d at 1366 (recognizing definition refers to immigration status, regardless of how or when it was obtained). "Adjustment is the change of an alien's *status* to 'that of an alien lawfully admitted for permanent residence.'" *Husic*, 2015 WL 106359, at *5 (citing 8 U.S.C. § 1255(a)). But adjustment of status is not an admission. *See id*. (citing *Bracamontes*, 675 F.3d at 386-87). Thus, Mr. Medina-Rosales was not "admitted" to the United States when his status was adjusted.

Reading § 1182(h) along with the definitions of these relevant terms, we conclude, like the majority of circuits, that only persons who obtained LPR status before or when they entered the United States are barred from seeking a waiver under § 1182(h). *Negrete-Ramirez*, 741 F.3d at 1053 (collecting cases); *see Stanovsek*, 768 F.3d at 516 (recognizing "distinction is very hard to see," but concluding that statutory language clearly excludes those who adjust to LPR).

> If the term "admitted" in the phrase "previously been admitted" included post-entry adjustment of status to an LPR, as proposed by the government, the first section of the statutory language, "an alien who has previously been admitted to the United States as," would be superfluous because the definition of "lawfully admitted for permanent residence" encompasses adjustment of status. . . . Had Congress intended the bar on eligibility to apply to all LPRs, it would have simply omitted this phrase. Furthermore, construing the statute to bar from eligibility only LPRs who entered into the United States in such status is

- 9 -

bolstered by the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.

*Negrete-Ramirez*, 741 F.3d at 1053-54 (internal quotation marks omitted). The fact that both "admitted" and "lawfully admitted to the United States for permanent residence" are used together indicates that Congress intended that they serve different purposes. *See Leiba*, 699 F.3d at 355; *see also Bracamontes*, 675 F.3d at 386 ("[I]f Congress intended [§ 1182(h)] to bar *all* 'alien[s] lawfully admitted for permanent residence,' there would have been no need to include the phrase 'previously . . . admitted into the United States.'").

Nor does § 1255(b) treat adjustment of status as an "admission." *See Husic,* 2015 WL 106359, at *6; *Stanovsek*, 768 F.3d at 519; *Hanif*, 694 F.3d at 485; *Martinez*, 519 F.3d at 546. Section 1255(b) states that "[u]pon the approval of an application for adjustment made under subsection (a) of this section, the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made." The statute is not "an effort by Congress to amend the definitions of 'admitted' and 'lawfully admitted for permanent residence' set forth in § 1101(a)." *Hanif*, 694 F.3d at 485. Rather, it "refers to the date an alien attains lawful permanent resident status." *Stanovsek*, 768 F.3d at 519. Indeed, "lawful admission for permanent residence" in § 1255(b) is nearly the same as "lawfully admitted for permanent residence" as used in § 1182(h) and defined in § 1101(a)(2). *See Husic*, 2015 WL 106359, at *6.

- 10 -

Additionally, the government argues that the interpretation adopted by the majority of circuit courts creates the absurd result "that the only alien who is barred from seeking a [§ 1182(h)] waiver is one who lawfully entered the United States as a lawful permanent resident." Aplee. Br. at 37. It contends that favoring one category of LPRs over another is arbitrary, and there is no reason why Congress would favor an LPR adjustment alien over an LPR admission alien.

We agree with the Sixth Circuit's rejection of a similar argument:

> We recognize that the BIA's interpretation of the Act would avoid a reading that appears to make little sense. Why would Congress distinguish between those who obtained lawful permanent resident status at the time of lawful entry and those who adjusted status later, for purposes of barring permanent residents who have committed aggravated felonies from discretionary hardship relief? Our inability to answer such a question does not, however, warrant expanding the scope of a statutory provision beyond a meaning as plainly limited as the one in question here. Absent a constitutional argument (none is made here), we must apply the clear meaning of the Act.

*Stanovsek*, 768 F.3d at 520. Furthermore, "[t]he fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Lockhart v. United States*, 546 U.S. 142, 146 (2005) (internal quotation marks omitted). If Congress intended LPRs who adjust to that status after entry to be ineligible for a waiver, it must amend § 1182(h). *See Bracamontes*, 675 F.3d at 389. Yet Congress has not done so, despite the fact that various circuits beginning in 2008 have not agreed with the government's interpretation of the statute.

- 11 -

CONCLUSION

Because we agree with the majority of circuits, we hold that under the clear language of § 1182(h), an LPR in Mr. Medina-Rosales' position is eligible for discretionary consideration for waiver of inadmissibility under § 1182(h). The petition for review therefore is granted and the case is remanded for further proceedings.