**Lidia BONILLA, Plaintiff,**

v.

**Jeh JOHNSON, Leon Rodriguez, Robert M. Cowan, and Leslie Tritten, Defendants.**

Civ. No. 14–4962 (BRT)

United States District Court, D. Minnesota.

Signed March 2, 2016

Anne E. Carlson, Esq., and David L. Wilson, Esq., Wilson Law Group, counsel for Plaintiff.

David W. Fuller, Esq., United States Attorney's Office, and Ubaid ul-Haq, Esq., United States Department of Justice, counsel for Defendants.

## MEMORANDUM OPINION AND ORDER

BECKY R. THORSON, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Lidia Bonilla brought this action under the Administrative Procedure Act, challenging the U.S. Citizenship and Immigration Services' ("USCIS") denial of her application to adjust her status to that of a lawful permanent resident ("LPR"). The parties agree that the sole question before the Court is whether a grant of temporary protected status ("TPS") under 8 U.S.C. § 1254a satisfies the threshold

requirement of admission under 8 U.S.C. § 1255(a) for purposes of becoming eligible for adjustment of status to a lawful permanent resident. Plaintiff argues that it is, and that she is therefore eligible to apply for adjustment of status under § 1255(a). Defendants disagree.

The parties consented to the exercise of jurisdiction by a United States Magistrate Judge over all proceedings in this case pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. Nos.16, 19.) This matter is now before the Court on Plaintiff's motion for summary judgment and Defendants' cross-motion to affirm USCIS's administrative decision. (Doc. Nos.21, 27.) On October 27, 2015, the Court held a hearing on the motions and took the motions under advisement on November 6, 2015, after allowing the parties short, post-hearing briefs. (Doc. No. 36.) Based on the record, submissions, and oral arguments from counsel, and as further explained below, the Court agrees with Plaintiff's interpretation of the statutory provisions at issue and therefore grants her motion and denies Defendants' motion.

## BACKGROUND

The facts of this case are undisputed. Plaintiff, a native and citizen of El Salvador, entered the United States in 1991 without inspection. The United States Attorney General designated El Salvador as a TPS country on March 9, 2001, after it experienced three consecutive earthquakes. *See* "Designation of El Salvador Under the Temporary Protected Status Program," 66 Fed.Reg. 14214–01 (Mar. 1, 2001). On January 16, 2006, while her application for asylum was still pending, she timely applied to USCIS for TPS.[1] Plaintiff disclosed on her application that she entered the United States without inspection in 1991. Finding no bar to admission, USCIS approved Plaintiff's application and granted her TPS in the United States in 2007. Plaintiff's TPS has been continuously renewed since then. As a TPS beneficiary, she is temporarily protected from removal and eligible for employment in the United States. 8 U.S.C. § 1254a(a)(1).

Plaintiff is the mother of Nelly Anderson, a United States citizen over the age of twenty-one. On February 21, 2014, Anderson submitted to USCIS a petition for an alien relative so that her mother would be eligible to apply for an immigrant visa as an immediate relative of an American citizen. That same day, Plaintiff applied for adjustment of status to that of a lawful permanent resident ("LPR"), pursuant to 8 U.S.C. § 1255.

On March 14, 2014, USCIS issued a request for evidence of Plaintiff's eligibility for adjustment of status, including "evidence of [her] lawful admission or parole into the United States." In response, Plaintiff provided copies of her TPS approval notifications and asserted that her TPS admission made her eligible to apply for adjustment of status. On July 19, 2014, USCIS issued a second request for evidence, again asking for proof of admission, inspection, or parole. Plaintiff again responded, resubmitting documents indicating USCIS's approval of her TPS and submitting a letter brief.

The USCIS approved Anderson's petition on October 23, 2014, confirming that Plaintiff is a parent of a United States citizen, but denied Plaintiff's Form I–485 application for adjustment of status. The denial was based on Plaintiff's failure to submit evidence of her lawful admission or parole into the United States.

---

1. Since then, the Secretary of the Department of Homeland Security ("DHS") has periodically extended TPS eligibility for El Salvadoran nationals. *See* 80 Fed.Reg. 893–01 (extending El Salvador's TPS designation to September 9, 2016, on January 7, 2015).

## DISCUSSION

### I. Summary Judgment Standard of Review

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Here, the parties agree that there are no facts in dispute; the only question is whether Plaintiff is, as a purely legal matter, eligible for adjustment of status to a lawful permanent resident.

### II. Standard for Judicial Review of Administrative Agency Decision

This Court has jurisdiction over this matter under the Administrative Procedure Act ("APA"), which authorizes judicial review of an agency's interpretation of a statute to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The judiciary is the final authority on issues of statutory construction and must reject administrative constructions that are contrary to clear congressional intent. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* deference involves a two-step inquiry. At step one, the court must determine "whether Congress has directly spoken to the precise question at issue" and "unambiguously expressed its intent." *Id.* at 842–43, 104 S.Ct. 2778; *see also U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (stating that where there is a dispute over the meaning of a statute, the inquiry begins "with the language of the statute itself"). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778; *see also Friends of Boundary Waters Wilderness v. Dombeck,* 164 F.3d 1115, 1121 (8th Cir.1999) ("When reviewing an agency's construction of a statute, the court first considers whether the intent of Congress is clear; if so, the court's inquiry is over[.]"). "[W]hen deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell,* —— U.S. ——, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)); *accord Greater Mo. Med. Pro–Care Providers, Inc. v. Perez,* 812 F.3d 1132, 2015 WL 8591614, at *5 (8th Cir. Dec. 14, 2015). The court proceeds to step two to consider "whether the agency interpretation 'is based on a permissible construction of the statute'" only if "the statute is silent or ambiguous on the question at issue." *Dombeck,* 164 F.3d at 1121 (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778).

### III. Analysis

The issue before the Court is one of statutory interpretation. And the threshold question under *Chevron* is whether the plain language of 8 U.S.C. § 1254a(f)(4) (a TPS benefits section), read in context, makes clear that when a person is granted TPS under 8 U.S.C. § 1254a, it satisfies the threshold requirement of inspection and admission to the United States under 8 U.S.C. § 1255(a) for purposes of becoming eligible for adjustment to LPR status. The Court holds that it does.

Under 8 U.S.C. § 1254a, the Attorney General may grant TPS to a national of a designated foreign state experiencing ongoing armed conflict, environmental disaster, or other "extraordinary and temporary conditions ... that prevent aliens who are nationals of the state from returning to the state in safety." 8 U.S.C. § 1254a(a)(1), (b)(1). The Attorney General is afforded

broad discretion to designate such countries and determine the duration of such designations. *See generally id.* § 1254a(b). If eligible for TPS, a foreign national is not subject to removal "from the United States during the period in which such status is in effect." *Id.* § 1254a(1)(A). Once granted TPS, individuals have other benefits as well. As relevant here, section 1254a(f)(4), titled "Benefits and status during period of temporary protected status," states:

> During a period in which an alien is granted temporary protected status under this section—
>
> ....
>
> (4) for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

8 U.S.C. § 1254a(f)(4). The § 1254a(f)(4) TPS benefits section therefore contemplates a situation where a person granted TPS would apply for adjustment of status under § 1255, as Plaintiff did here.

Section 1255, in turn, provides:

> The status of an alien *who was inspected and admitted* or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is

eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added). Section 1255(a) therefore allows a nonimmigrant who was inspected and admitted into the United States (*i.e.*, a nonimmigrant in lawful status for the purposes of adjustment) to become a lawful permanent resident if certain conditions are met. Section 1254a(f)(4) is clear: "for purposes of adjustment of status under section 1255," a person granted TPS who was not "inspected and admitted or paroled into the United States" "shall be considered as being in, and maintaining, lawful status as a nonimmigrant." This can only mean that they are "considered" as though they had been "inspected and admitted or paroled into the United States." *See Flores v. U.S. Citizenship and Immigration Serv.*, 718 F.3d 548, 553 (6th Cir.2013) ("We interpret the statute exactly as written—as allowing [the applicant] to be considered as being in lawful status as a nonimmigrant for purposes of adjustment of status under § 1255."). In other words, the inspected and admitted prerequisite of § 1255(a) is satisfied by application of § 1254a(f)(4). *Medina v. Beers*, 65 F.Supp.3d 419, 429 (E.D.Pa.2014) ("By its clear terms, § 1254a(f)(4) applies to the entirety of § 1255 and thereby satisfies the 'inspected and admitted or paroled' prerequisite of § 1255(a).").[2]

Indeed, the plain language of the statute as written resolves the question before

---

**2.** The facts in *Flores* and *Medina* are very similar to the facts in this case and address the very same legal issue as presented here. In *Flores*, the plaintiff, a Honduran citizen, entered the United States without inspection in March 1998. 718 F.3d at 550. He was granted TPS on September 3, 1999, and his TPS was continuously renewed thereafter due to his good moral character. *Id.* In August

2010, he married an American citizen and they jointly sought an adjustment of his status to LPR. *Id.* The plaintiff's application for adjustment, however, was denied because he "entered the United States without inspection," and thus could not satisfy § 1255's threshold requirement of inspection. *Id.* at 550–51. On appeal, the Sixth Circuit disa-

the Court. Section 1254a(f)(4) applies to the entirety of § 1255, allows Plaintiff to be considered as being in lawful status as a nonimmigrant for purposes of adjustment of status under § 1255, and therefore satisfies the "inspected and admitted or paroled" prerequisite of § 1255(a). And because the statute is clear and unambiguous—not silent or ambiguous—the Court need not consider the agency's interpretation under step two of the *Chevron* deference analysis.

Defendants argue that the term "admission" in § 1255(a) should be construed narrowly, asserting that the Eighth Circuit has only accepted one way that an alien may be admitted into the United States post-entry, which is through adjustment of status, not through a grant of TPS. They rely on *Roberts v. Holder*, 745 F.3d 928 (8th Cir.2014). *Roberts*, however, addressed an entirely different question of whether an individual who had already adjusted status from within the United States before being convicted for multiple crimes, was eligible for a criminal waiver under 8 U.S.C. § 1182(h). *Roberts*, 745 F.3d at 932. Finding the statutory language of § 1182(h) ambiguous, the Eighth Circuit deferred to the Board of Immigration Appeals' definition of post-entry admissions. *Id.* The Court need not wade into this agency-decision thicket to determine Plaintiff's eligibility under §§ 1254a and 1255, however, because a court need only consider an agency interpretation otherwise entitled to *Chevron* deference when the statute in question is ambiguous. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). Again, because the Court's holding is based on the plain language of the statute, which the Court finds clear, it does not need to address the question of deference to the agency's decision.[3] Here, the terms of

greed with the Government's statutory interpretation and held that the plain language of § 1254a(f)(4) communicates that an alien who was granted TPS after an illegal entry into the United States, and otherwise meets the other requirements in § 1255(a), is eligible for adjustment of status. *Id.* at 553.

In *Medina,* the plaintiff, also a citizen of Honduras, entered the United States without inspection in October 1992. 65 F.Supp.3d at 421. He was granted TPS in 1999. *Id.* In January 2002, the plaintiff married a United States citizen and they jointly sought an adjustment of his status to LRP in 2011. *Id.* Thereafter, USCIS made several requests for additional evidence to address the plaintiff's eligibility for adjustment of status, all of which the plaintiff responded to. *Id.* USCIS then issued a notice of its intent to deny the plaintiff's adjustment of status under 8 U.S.C. § 1255(a) for appearing "to be statutorily ineligible for adjustment of status under Section 245(a) because [he] entered without inspection." *Id.* at 422. Plaintiff responded, as Plaintiff Bonilla did here, "arguing that the plain language of the statute in question authorized his classification as an individual in and maintaining lawful status as a non-immi-

grant, and thus eligible for adjustment of status," and he relied on 8 U.S.C. § 1254a(f)(4). *Id.* USCIS ultimately denied the plaintiff's application for adjustment of status for the same reasons provided in its earlier notice. *Id.* The Plaintiff appealed to the district court. The court, in full agreement with the Sixth Circuit in *Flores*, found the language in § 1254a(f)(4) clear and unambiguous, and held that "under §§ 1254a(f)(4) and 1255, an alien that entered the country without inspection, but was subsequently granted TPS, is eligible for readjustment of status so long as he or she meets the other requirements set forth in § 1255(a)." *Id.* at 429, 436.

**3.** However, the Court notes that even if the statute were ambiguous, the Court agrees with the Sixth Circuit's determination that the agency's decisions are not entitled to deference. *See Flores,* 718 F.3d at 555; *see also Medina*, 65 F.Supp.3d at 436–37 ("In this matter, the agency decisions, while consistent with one another, are not validly reasoned and '[b]eing consistently wrong does not afford the agency more deference than having valid reasoning.' ") (quoting *Flores*, 718 F.3d at 555).

§ 1254a(f)(4) are unambiguous, therefore leaving "no room for agency discretion." *Brand X*, 545 U.S. at 982, 125 S.Ct. 2688. Even so, the *Roberts* case cuts against Defendants' argument. In dicta referencing § 1255, the *Roberts* court noted that "[s]ection 1255(b) treats *adjustment* itself as an 'admission' by directing the Attorney General to record 'admission' as the date the alien adjusts his status," therefore indicating that "admission" is not always limited to only port-of-entry admissions. *See Roberts*, 745 F.3d at 933; *see also Medina*, 65 F.Supp.3d at 429 (noting the same). Further, as the court in *Medina* pointed out, "[u]nder the immigration laws, the process obtaining of 'nonimmigrant' status requires the 'admission' of the alien." 65 F.Supp.3d at 430 (citing 8 U.S.C. § 1184(a)(1) ("The *admission* to the United States of any alien as a nonimmigrant ...") (emphasis added)); *see also* 8 U.S.C. § 1184(b) (stating that every alien "shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 1101(a)(15) of this title").

In other words, by the very nature of obtaining nonimmigrant status, the alien goes through inspection by a consular officer and is deemed "admitted." In turn, by providing that, for purposes of adjustment of status under § 1255, a person under TPS shall be considered as "being in, and maintaining, lawful status as a nonimmigrant," § 1254a(f)(4) clearly states that a person under TPS is deemed to have satisfied all of the requirements of nonimmigrant status, including that of admission after inspection. *See U.S. v. Ochoa–Colchado*, 521 F.3d 1292, 1296 (10th Cir.2008) (noting that an alien who has acquired unlawful status by illegally crossing the border

without admission or parole cannot relinquish that illegal status until he or she is granted TPS, which allows the alien to be "considered as being in, and maintaining, lawful status as a nonimmigrant" for limited purposes).

*Medina*, 65 F.Supp.3d at 430.

Defendants also argue that § 1254a(f)(4) applies only to § 1255(c)(2) because the two provisions use similar language (*i.e.*, "maintain" and "maintaining"). Section 1255(c)(2) states that aliens other than immediate relatives of United States citizens, among other categories, are barred from becoming LPRs if they "continue[ ] in or accept[ ] unauthorized employment prior to filing an application for adjustment of status or ... [are] in unlawful immigration status on the date of filing the application for adjustment of status or ... fail[ ] (other than through no fault of [their] own or for technical reasons) to maintain continuously a lawful status since entry into the United States...." 8 U.S.C. § 1255(c)(2) (emphasis added). Defendants fail to explain why Congress drafted § 1254a(f)(4) with a general reference to "section 1255" for purposes of adjustment of status if they intended to limit it to § 1255(c)(2). Congress is fully capable of referencing specific statutory subsections, as it has done in other parts of the Immigration and Nationality Act. *See, e.g.*, 8 U.S.C. § 1227(a)(1)(H) (specifically providing a waiver of admissibility for 8 U.S.C. § 1182(a)(6)(C)(i)). Defendants' argument improperly attempts to rewrite a perfectly clear statutory reference to § 1255 as a whole. *See Milner v. Dep't of Navy*, 562 U.S. 562, 131 S.Ct. 1259, 1267, 179 L.Ed.2d 268 (2011) (reasoning that taking a red pen to a statute to "cut ... out some [words]" and "past[e] in others" ignores the plain meaning of the statute) (internal citation omitted); *see also Root v. New Liberty Hosp. Dist.*, 209 F.3d 1068, 1070 (8th Cir. 2000) ("Courts are obligated to refrain

from embellishing statutes by inserting language that Congress has opted to omit.") (citing *Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993)).

Instead of rewriting the statute, the Court agrees with other courts who have looked at this issue under analogous facts, and concludes that "the plain meaning of § 1254a(f)(4) indicates that it applies to the entirety of § 1255." *Ramirez v. Dougherty,* 23 F.Supp.3d 1322, 1324 (W.D.Wash. 2014) (citing *Flores,* 718 F.3d at 553); *see also Medina,* 65 F.Supp.3d at 431–32 ("The exclusion of a reference to subsection (c)(2) and the inclusion of the word "nonimmigrant" can only suggest that Congress meant, "for purposes of adjustment of status under section 1255," to designate TPS beneficiaries as "nonimmigrants" so that such beneficiaries would be deemed inspected and admitted or paroled for purposes of adjustment of status."). The Court agrees "that while one must be 'admitted' to gain LPR status, TPS beneficiaries are afforded with an exception under the TPS statute that operates as an inadmissibility waiver." *Id.* (citing *Flores,* 718 F.3d at 552); *cf. United States v. Orellana,* 405 F.3d 360, at 361, 366 (5th Cir.2005) (although involving the effect of TPS on a criminal indictment for being an illegal alien in possession of a firearm, stating that "[a]s a result [of having status as a TPS beneficiary], Orellana was granted protection from removal, authorized to seek employment, and *given the ability to apply for adjustment of status as if he were in lawful non-immigrant status* ") (emphasis added).

Defendants also argue that the Court should follow the Eleventh Circuit's decision in *Serrano v. United States Attorney General,* 655 F.3d 1260 (11th Cir.2011), which reached a contrary conclusion when interpreting §§ 1254a(f)(4) and 1255(a). This Court, however, agrees with *Flores,* *Medina,* and *Ramirez* that *Serrano* is distinguishable on its facts, particularly because the plaintiff in that case, unlike the Plaintiff here, failed to honestly disclose that he originally entered the country illegally without inspection. *See Flores,* 718 F.3d at 55, n.4; *Medina,* 65 F.Supp.3d at 428; *Ramirez,* 23 F.Supp.3d at 1324; *see also Serrano,* 655 F.3d at 1265, n. 4 (stating that the petitioner did "not assert that he disclosed his illegal entry into the United States on his application for Temporary Protected Status"). Whether *Serrano* was ultimately based on that non-disclosure or not, if the veracity of a petitioner's TPS application is challenged, the benefits that flow from TPS could be challenged and potentially restricted as well. *See Medina,* 65 F.Supp.3d at 434 (noting that in both *Flores* and *Medina* "the plaintiffs' illegal entries were disclosed, meaning that the grant of TPS constituted the Attorney General's waiver of those entries and was a knowing grant of the full benefits of TPS"). Regardless, the Court agrees that the analysis of the interplay between §§ 1254a(f)(4) and 1255(a) set forth in *Flores* and *Medina* is the proper analysis. *See Medina,* 65 F.Supp.3d at 427 ("With little written analysis of the statutory language, the Eleventh Circuit held that '[t]he plain language of § 1255(a) limits eligibility for status adjustment to an alien who has been inspected and admitted or paroled.... That an alien with Temporary Protected Status has 'lawful status as a nonimmigrant' for purposes of adjusting his status does not change § 1255(a)'s threshold requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled.'") (quoting *Serrano,* 655 F.3d at 1265); *see also id.* at 434 (referring to *Serrano* 's statutory analysis as "perfunctory"). This Court finds the Eleventh Circuit's interpretation too narrow and in-

consistent with the plain language of the statute.

Further, the Court finds other arguments raised by Defendants, whereby they parse words, compare language from other statutes and sections, and rely on agency decisions, unpersuasive in light of the plain language of § 1254a(f)(4). (See, e.g., Doc. No. 30, Defs. Mem. in Supp. of their Mot. for J. Seeking Affirmance of USCIS' Administrative Decision 17–18, (arguing that the only exceptions to the general rule of non-immigrant admission and consular processing may be "S," "T," "U," and "V" non-immigrant visas); 22–23 (arguing §§ 1254a(e) and 1229b(a)(2) informs Congress' intent for how to define admission); 23–26 (arguing the "shall be considered" language is distinct and different from what is meant to be 'admitted' "); 29–35 (arguing deference to agency decision).) And the Court fully agrees with the Sixth Circuit's interpretation, and the Medina court's analysis of the issues raised by defendants there, many of which align with Defendants' additional arguments here. See Medina, 65 F.Supp.3d at 429–36 (addressing the Government's arguments that (1) Congress intended different meanings for the words "lawful status as a nonimmigrant" from "inspected and admitted or paroled"; (2) if plaintiff's interpretation is correct, there would be no need for § 1255 to separately refer to admission or parole as a threshold requirement in subsection (a), and to refer to the failure to maintain lawful status as a bar to eligibility in subsection (c); (3) the plain language of § 1254a(f)(4) addresses only the bar to adjustment of status in § 1255(c)(2); (4) the plaintiff's interpretation conflicts with portions of § 1255 that expressly address adjustment of status for TPS beneficiaries (i.e., § 1254a(h)), and exempt other categories of applicants from § 1255(a)'s "inspected and admitted or paroled" requirement (i.e., § 1255(h)(1) and the § 1255(a) exemption for those covered by the Vio-

lence Against Women Act); (5) the Court should apply Serrano; and (6) their interpretation is consistent with congressional intent).

Finally, the Court echoes other courts' sentiments that the Government's statutory interpretation would create an absurd result. As stated so eloquently in Medina, and as is equally applicable here:

> To interpret the statutes in the manner suggested by Defendants, the Court would have to find that, despite allowing TPS beneficiaries to remain and work in this country in excess of fifteen years, Congress intended that such beneficiaries could never become lawful permanent residents without physically leaving this country, abandoning families that they have created during their extended stay, quitting their employment that they have been allowed to maintain, and returning to a country that the Attorney General has expressly deemed unsafe, simply in order to undergo the immigration process all over again. In addition, these individuals would have to surrender any entitlement to TPS because, by leaving the country, they would fail to maintain "continuous physical presence" as required by the TPS extension...,
> To force [plaintiff] to return to a country that the United States Attorney General has deemed dangerous simply to have [p]laintiff physically re-enter the United States is a result that appears to serve no practical purpose.

Medina, 65 F.Supp.3d at 435–36. The Sixth Circuit also found that policy considerations weighed in favor of its interpretation over the Government's:

> Mr. Suazo seems to be the exact type of person that Congress would have in mind to allow adjustment of status from TPS beneficiary to LPR. He has been in the United States for about fifteen years. He has roots here. His wife and

minor child are here. They are both United States citizens. He is of good moral character and a contributing member of society. He has waited his turn for an independent, legal, and legitimate pathway to citizenship, through the immediate relative visa application. If the statutes are interpreted as the Government argues they should be, the result would be absurd. The Government is essentially telling him that he is protected and can stay here, but that he will never be allowed to become an LPR, even for an independent basis. Under the Government's interpretation, Mr. Suazo would have to leave the United States, be readmitted, and then go through the immigration process all over again. This is simply a waste of energy, time, government resources, and will have negative effects on his family— United States citizens. We are disturbed by the Government's incessant and injudicious opposition in cases like this, where the only purpose seems to be a general policy of opposition for the sake of opposition.

*Flores,* 718 F.3d at 555–56.

Here, it is undisputed that Plaintiff entered this country approximately twenty-five years ago, met all the criteria to receive TPS, is of good moral character, and has continued to timely renew her TPS. She also has an independent basis to adjust her status, namely through the immediate relative petition filed by her daughter. Requiring Plaintiff to return to El Salvador, a country that the Department of Homeland Security ("DHS") has declared since 2001 carries Temporary Protected Status because of substantial "disruption of living conditions" based on "an environmental disaster within that country, specifically the devastation resulting from a series of earthquakes," tropical storms, a volcanic eruption, and drought, for the sole purpose of returning to this country to gain "admission" would not only

be meaningless, but heartless as well. 80 Fed.Reg. 893–01.

## CONCLUSION

The Court concludes that the plain language of 8 U.S.C. §§ 1254a(f)(4) and 1255(a) provides that an alien who enters this country without inspection, admission, or parole, but who subsequently is granted TPS, is eligible for adjustment of status under § 1255, provided that he or she meets the other requirements set forth in § 1255(a). Because the Government's interpretation of §§ 1254a(f)(4) and 1255(a) is contrary to the plain language of these statutes, the Court concludes that the agency's decision in this case was arbitrary and capricious. Accordingly, the Court reverses the agency's decision and remands to USCIS for further review consistent with this opinion.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 21) is **GRANTED;**

2. Defendants' Motion for Judgment Seeking Affirmance of USCIS' Administrative Decision (Doc. No. 27) is **DENIED;** and

3. This matter is **REMANDED** to the United States Citizenship and Immigration Service for further proceedings consistent with this Memorandum Opinion and Order. **LET JUDGMENT BE ENTERED ACCORDINGLY.**