**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NOEL GONZALEZ VARGAS,
a/k/a Noel Gonzalez,

     Petitioner,

v.

JEFF SESSIONS,[*]
United States Attorney General,

     Respondent.

No. 16-9521
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **BRISCOE**, **LUCERO**, and **HARTZ**, Circuit Judges.
_____

Noel Gonzalez Vargas petitions for review of a decision of the Board of

Immigration Appeals (Board) that upheld the immigration judge's denial of his

application for restriction on removal and protection under the Convention Against

Torture (CAT).  We deny the petition for review.

---

[*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Jeff Sessions is substituted for Loretta E. Lynch as the respondent in this
action.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Petitioner is a native and citizen of Mexico. He first entered the United States illegally in 1994, where he remained until January 2005, when he returned to Mexico to visit his ailing mother. Following a month-long visit, he attempted to return to the United States. To that end, he bought some fake documents in Tijuana and tried to cross the border. He was denied entry, however, and ordered removed to Mexico. A few weeks later, petitioner illegally entered the United States, where he lived until 2014, when he came to the attention of immigration officials following his arrest for driving under the influence. An immigration officer issued an order reinstating the order of removal originally entered in February 2005. Petitioner did not contest the order reinstating removal, but did express a fear of returning to Mexico. An asylum officer conducted an interview and concluded that petitioner had established a reasonable fear of persecution in Mexico. His case was referred to an immigration judge for withholding-only proceedings. *See* 8 C.F.R. § 208.31(e).

At the merits hearing, petitioner testified about an incident that occurred in January 2005. Petitioner was at a fair in his hometown when he was hit on the head with a bottle when he intervened in an argument between his nephew, Angel, and some other men. A few days later, petitioner went back to the fair to help his sister pack up her clothing booth. His niece came to him for help because Angel once again was involved in an altercation. When petitioner arrived to help, he found his nephew on the ground with a stab wound in his stomach. The state police apprehended the attackers as they left the fair grounds. On route to a medical clinic,

2

Angel told petitioner that his attackers were the same men he argued with a few days earlier. The police came to the hospital and asked petitioner to accompany them to city hall where the suspects in the stabbing were being held. Petitioner identified the suspects as the same men Angel had argued with at the fair.

The next day, the city police asked petitioner to come to the station and give a statement to "[t]he president . . . for the district," who was "[l]ike a police officer." Admin. R. at 99. Petitioner again identified the suspects as the men who attacked Angel. The president ordered the men to pay Angel's medical bills and "were going to be given one month in prison as punishment." *Id*. at 101. According to petitioner, the medical bills were paid by Ramiro Lea—not the suspects.

A few days later, petitioner was at a local market when he ran into a group of men—two of whom were the suspects he identified in the stabbing. "They chased me and they shot at me except they did not hit me and I went into a church." *Id*. at 102. He eventually made his way to the clinic where Angel was recovering. Angel told petitioner that it was pointless to report the incident to the police, so he went home and remained in hiding until he made his way to Tijuana. As explained earlier, petitioner's first attempt to enter the United States was unsuccessful and resulted in a removal order; however, he managed to enter the country on his second attempt.

Several months later, petitioner's brother told him that Mr. Lea and his men had kidnapped a local taxi driver. While collecting the ransom, two of the kidnappers, including one of the men who stabbed Angel at the fair, were killed by federal authorities. Their bodies were put on display in the town square, and wanted

3

posters for Mr. Lea and his men went up throughout the town. According to petitioner, Mr. Lea went into hiding, but has been living openly in the town for some time. Shortly before the hearing, petitioner's brother told him that his truck was vandalized and he suspected Mr. Lea.

Petitioner said he was afraid to return to Mexico because he thinks that Mr. Lea will harm or kill him as revenge for having to pay Angel's medical bills in 2005. Also, he wants to remain in the United States because most of his family is here. He further told the immigration judge that he could not relocate from his hometown to another area of Mexico "[b]ecause I don't know anybody there." *Id*. at 114.

The immigration judge denied petitioner's application for restriction on removal and protection under the CAT. The Board affirmed the immigration judge's decisions "for the reasons set forth by the Immigration Judge," *id*. at 3, and also rejected his argument that he was deprived of his right to due process and a fair hearing in the immigration court.[1] Because petitioner raises no arguments in this court to challenge the agency's denial of his request for protection under the CAT or the Board's due-process decision, these issues are waived. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

---

[1] Petitioner argues that the Board failed to adequately address the issues he raised on appeal and the matter must be remanded to the Board for further review. We disagree. "[T]he regulations authorize a single [Board] member to adopt the [immigration judge's] decision and issue an affirmance without opinion." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006).

4

## II. ANALYSIS

### A. *Venue*

Petitioner filed his petition for review in the United States Court of Appeals for the Fifth Circuit. On motion of the government, the Fifth Circuit transferred the petition to this court. We ordered the parties to address venue in their briefs. Having reviewed their arguments, we conclude that venue is proper in this court.

A "petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). Section 1252(b)(2) is "a non-jurisdictional venue provision." *Lee v. Lynch*, 791 F.3d 1261, 1264 (10th Cir. 2015).

The notice of hearing stated that the merits hearing would take place before the immigration judge on September 24, 2014, at a detention center in Chaparral, New Mexico. *See* Admin. R. at 471. On September 24, the immigration judge, who was located in El Paso, Texas, held a video conference hearing on merits. Petitioner was present in Chaparral, New Mexico. *See id*. at 80.

When a hearing takes place telephonically or by videoconference, we look to an internal memorandum issued by the Office of the Chief Immigration Judge to determine where the proceedings were completed. *See Medina-Rosales v. Holder*, 778 F.3d 1140, 1143 (10th Cir. 2015). The memorandum, in relevant part, provides that the hearing location is "**the location where the case is docketed for hearing**." U.S. Dep't of Justice, Exec. Office for Immigration Rev., Office of the Chief IJ, Interim Operating Policies & Procedures Mem. No. 04-06: Hr'gs Conducted through

5

Tel. & Video Conf., at 2 (Aug. 18, 2004),

http://www.justice.gov/eoir/efoia/ocij/oppm04/04-06.pdf.  The memorandum further

states that the hearing location (i.e., where the case was docketed for the hearing)

does not change simply because an immigration judge appears by video conference

from a different location.  *See id*.  Therefore, "[t]he IJ's presence in [El Paso] and the

fact that proceedings were conducted by video conference did not change the place of

the hearings from [New Mexico] to [El Paso]."  *Medina-Rosales*, 778 F.3d at 1143.

As such, venue is proper in this court.

### B.  Restriction on Removal

### 1.  Standard of Review

"Our scope of review depends in large part upon the process employed by the

[Board] below."  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006).

Here, a single member of the Board "affirm[ed] the Immigration Judge's . . .

decision[] denying the [petitioner's] applications for withholding and protection

under the [CAT], for the same reasons set forth by the Immigration Judge," Admin.

R. at 3, and also addressed petitioner's due-process argument.  This was a "brief

order" under 8 C.F.R. § 1003.1(e)(5).  *See Uanreroro*, 443 F.3d at 1203-04.  Under

(e)(5), we will not affirm the Board's decision on grounds raised in the immigration

judge's decision unless they are relied upon by the Board in its affirmance.  *Id*. at

1204. Because the Board relied on the grounds raised in the immigration judge's

decision to affirm the immigration judge, we can look to and rely on those same

grounds to affirm the Board's order.  *See id*.

6

"In our review of the agency's decision, we decide purely legal questions *de novo*. Agency findings of fact are reviewed under the substantial evidence standard. Under this standard of review, agency 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011) (citations omitted) (quoting 8 U.S.C. § 1252(b)(4)(B)).

### 2. *Past Persecution*

"Under 8 U.S.C. § 1231(b)(3)(A), an alien is entitled to restriction on removal if the alien's life or freedom would be threatened in the country of removal because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (brackets and internal quotation marks omitted). "An alien may create a rebuttable presumption of eligibility for restriction on removal by . . . demonstrating 'past persecution' in the proposed country of removal on account of one of the protected grounds, 8 C.F.R. § 1208.16(b)(1)." *Sidabutar*, 503 F.3d at 1123. Or the alien may show that "'it is more likely than not that [he] would be subject to persecution on one of the specified grounds upon returning to the proposed country of removal, 8 C.F.R. § 1208.16(b)(2).'" *Sidabutar*, 503 F.3d at 1123-24 (internal quotation marks omitted). "[W]hether an alien has demonstrated persecution is a question of fact." *Ritonga*, 633 F.3d at 974 (internal quotation marks omitted).

The immigration judge found that the "incident in Mexico wherein the [petitioner] had a bottle broken over his head and was chased and fired at once . . .

7

does not rise to the level of persecution." Admin. R. at 68. We agree that the treatment experienced by petitioner was not of the type that rises to the level of persecution. *See, e.g. Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (no past persecution where the attacks on the alien did not require medical attention); *Sidabutar*, 503 F.3d at 1124 (alien who suffered repeated beatings and a robbery failed to establish past persecution); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005) (alien who was fondled and suffered a minor head injury during a robbery and also witnessed rough behavior at a wedding failed to establish past persecution). The immigration judge's findings are conclusive because no reasonable adjudicator would be compelled to conclude otherwise.

### 3. Future Persecution

Alternatively, petitioner argues that he demonstrated a well-founded fear of future persecution. "For a fear of future persecution to be well-founded, it must be both subjectively genuine and objectively reasonable." *Ritonga*, 633 F.3d at 976 (internal quotation marks omitted). The immigration judge found that petitioner "has not and cannot meet his burden of proving he faces even a realistic possibility . . . of future harm for *any* reason, much less a reason that would warrant a grant of [restriction on] removal." Admin. R. at 69.

We agree with the immigration judge that petitioner's fear of future harm was not objectively reasonable. First, he was involved in a single incident more than ten years ago. Further, the alleged harm he suffered was not on account of any enumerated ground; instead he argued that Mr. Lea would seek to harm him because

8

he had to pay Angel's medical bills.  Nor was there any evidence that the Mexican government was unwilling to control Mr. Lea and his men; instead the evidence was that law enforcement officials put up wanted posters following the attack on Angel and Mr. Lea was forced into hiding.  Last, the evidence was that Mr. Lea operated in petitioner's hometown.  As such, the immigration judge concluded that petitioner could avoid future harm by relocating to another part of the country and it would be reasonable for him to do so.  *See* 8 C.F.R. § 1208.16(b)(2).  The immigration judge's findings are conclusive because no reasonable adjudicator would be compelled to conclude otherwise.

The petition for review is denied.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

9